11 N.J. Super. 205 (1950)
77 A.2d 820
FIDELITY UNION TRUST COMPANY, AS TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF MICHAEL J. DOYLE, DECEASED, PLAINTIFF,
v.
THE CITY OF NEWARK, AND MEYER C. ELLENSTEIN, DIRECTOR OF REVENUE AND FINANCE AND RECEIVER OF RENTS OF THE CITY OF NEWARK, DEFENDANTS.
Superior Court of New Jersey, Essex County Court Law Division.
Decided December 14, 1950.
*207 Messrs. Riker, Emery & Danzig (Mr. Charles W. Kappes, Jr., appearing), attorneys for plaintiffs.
Mr. Charles Handler (Mr. Joseph A. Ward, of counsel), attorney for defendants.
HARTSHORNE, J.C.C.
Plaintiff, the former owner of certain premises in the City of Newark, sold on tax sales to the City, sues the City for the amount of certain net rents collected from such properties by the City under the statute, during the period plaintiff still owned the property, and the City was the holder of the tax sale certificates thereon. Defendant claims these net rents, in the stipulated amount of $767.25, are to be applied by it to the payment of unpaid *208 taxes on such property, imposed subsequent to the taxes for which the property was sold. Such is the issue in this cause, tried before the court without a jury on stipulated facts.
This issue obviously depends upon the interpretation of the tax sale statutes under which the City sold the property for taxes and went into possession as purchaser of the tax sale certificate to collect rents. "The interpretation of the (statutes in question) depends upon the nature of the subject-matter and the object which the Legislature sought to accomplish." Newark v. Lodato, 139 N.J. Eq. 471 (Ch. 1947).
The underlying purpose of the statutes authorizing municipalities to sell lands for taxes is to enable the municipality to obtain the payment of its taxes without going into the real estate business. The municipality is given a wide variety of statutory methods to hold, and to proceed with, tax sales. It may sell the property therein either to third parties or to itself. It may sell to itself by various methods. When it sells to itself, it may assign the tax sale certificate to a third party by several methods:
(1) It may sell such certificate without affecting "any municipal lien subsequent to the certificate of tax sale." (R.S. 54:5-114.1, as amended by P.L. 1941, c. 232, p. 651, § 1.)
(2) It may sell its tax sale certificate "including all subsequent municipal liens held by" it. (R.S. 54:5-114.2, as amended by P.L. 1943, c. 149, p. 425, § 1.) Under paragraph (b) of this latter statute, it may sell its tax sale certificate to a purchaser for a sum "less than the total amount due on such certificate of tax sale, including all subsequent liens plus interest and costs."
The properties in question here were apparently sold, according to the stipulated facts, under this last statutory provision, and bought by the purchaser for such a deficit purchase price. This statute further provides that the total amount required for redemption from such tax sale shall include not only the amount of the tax sale, but "all subsequent municipal liens with interest and costs," save that this sale shall not cover "taxes for the current year" of the sale. (Ibid., § 114.3.) The purchaser from the City of the tax sale certificate *209 must further foreclose the property owner's right of redemption within two years. Until he does so, he shall not be given possession of the tax sale certificate, which the City shall continue to hold. (Ibid., § 114.7.) Furthermore, if in such foreclosure proceedings a person in interest shall redeem "by paying the full amount found to be due by the court, the assignee (of the tax sale certificate) shall only be entitled to receive out of said (redemption) moneys the amount actually paid to the municipality for said assignment together with lawful interest thereon from the date of payment * * * the balance shall be paid to the municipality." (Ibid., § 114.8.) In short, under the statute, even if the purchaser of the tax sale certificate  the assignee  purchases such certificate for an amount less than that due on the certificate, including all subsequent liens (as he did here), this deficit is still due the municipality. In other words, the municipality is still deemed to hold the property as security for the full payment by the property owner to it, of its taxes due.
This intent would seem in full accord with the statute, giving the municipality the right to collect rents and profits by taking possession of the property when it became the holder of a tax sale certificate. (R.S. 54:5-53.1, as amended by P.L. 1943, c. 144, p. 393, § 1) and with the acts of the parties. This is made clear: (1) by the fact that these very assignments of the tax sale certificates (Stipulation, Schedule A) specifically reserved to the City of Newark, until the recording of the final foreclosure is decreed, or until redemption by the property owner, the right, as holder of the tax sale certificates, to collect and apply the rents under the statute for its protection and benefit; (2) the rent statute itself specifically provides that "Whenever a municipality has * * * become the purchaser of any lands at any tax sale * * * (it) shall be entitled to immediate possession of the property sold * * * and to all the rents and profits thereof while the holder thereof, until redemption * * *." (Ibid.) In this very case, the City of Newark remained the holder of the property and of the tax sale certificate until the final foreclosure decree, which occurred May 13, 1946. Under the statute, *210 it, therefore, had the right to the rents and profits till such date. The net rents in dispute here were all collected before such date, according to the stipulated facts.
The statute further provides that "all rents and profits collected by such municipality shall be credited on the amount due upon said certificate of tax sale and for subsequent taxes * * *." (Ibid.) Accordingly, upon final foreclosure, to which proceedings the property owner is a party, the City must credit upon the amount due from the land the amount received on the sale of the above tax certificate. But if this, as is the case here, does not cover the amount due from the land, including "subsequent taxes," the court decrees, as against the property owner, that the balance of the rents and profits is to be applied by the City to pay this tax deficit.
In short, the purpose of the above tax sale proceedings, whereby the municipality, the owner of the tax sale certificate, assigns same to a third party for a sum less than that due thereon, plus subsequent municipal liens, is not to make the municipality lose this deficit in taxes. Rather the intention is to enable the municipality to recover this deficit from the property, either directly from the property owner on his redemption of the property, or by using the rents and profits from such property for such purpose. There is no indication in this particular statute that the owner, who has failed to pay the taxes due on the property, can make the City return to him the rents and profits which the City has lawfully collected from the property to pay those very taxes.
Since the statute is to be interpreted in accordance with its intent, as seen above, and since the mere clerical failure of a municipal employee to apply these rent moneys promptly, as required by law, cannot estop the City from carrying out the law (J.S. Rippel & Co. v. Newark, 136 N.J. Eq. 467 (E. & A. 1945); State v. Giller, 5 N.J. Super. 130 (App. Div. 1949), judgment may be entered for the defendants