NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, A NEW JERSEY CORPORATION, APPELLANT, v. ABRAM M. VERMEULEN, STATE COMPTROLLER, DIVISION OF BUDGET AND ACCOUNTING, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, DEFENDANT-APPELLANT.

Argued February 16, 1965—Decided May 17, 1965.

492

*Mr. Vincent P. Biunno* argued the cause for appellant (*Messrs. Lum, Biunno & Tompkins,* attorneys).

*Mr. Elias Abelson,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. This case involves sundry attacks upon the constitutionality of the Railroad Tax Law of 1948, *N. J. S. A.* 54:29A–1 *et seq.*

Taxes for 1962 and 1963 levied against the New York, Susquehanna and Western Railroad Company (herein Susquehanna) being unpaid, the State Comptroller issued to the

Clerk of the Superior Court a certificate showing the amount thereof, and upon that certificate the Clerk of the Superior Court entered among docketed judgments the amount so certified against Susquehanna. Susquehanna appeals from the issuance of the certificate and the judgment entry so made. We certified the matters before the Appellate Division considered them.

Both officials acted under the authority of *N. J. S. A.* 54:29A–57 which reads:

"As an additional or alternative remedy, the State Comptroller may issue a certificate to the Clerk of the Superior Court that a taxpayer is indebted under this or any former act for the taxation of railroads in such an amount as shall be named in such certificate, and thereupon the clerk to whom such certificate shall have been issued shall immediately enter upon his record of docketed judgments the name of such taxpayer, and of the State, the amount of the debt so certified, a short name of the tax, and the date of making such entries. The making of the entries shall have the same force and effect as the entry of a docketed judgment in the office of such clerk, and the State Comptroller shall have all of the remedies and may take all of the proceedings for the collection thereof which may be had or taken upon the recovery of a judgment in a civil action, but without prejudice to the taxpayer's right of appeal."

At the time of the certificate and the judgment, administrative appeals were pending challenging assessments of Class II real property for the years in question. Following the judgment entry in question, Susquehanna, under protest, paid the full amount plus statutory interest of 1% per month.

I.

Susquehanna contends the statute by its treatment of Class II railroad property violates *Art.* VIII, § I, ¶ 1 of our State Constitution.

Class II property embraces all real property used for railroad purposes other than main stem. *N. J. S. A.* 54:29A–17. The railroad tax statute provides that all property used for railroad purposes shall be assessed by the State Tax Commissioner, *N. J. S. A.* 54:29A–7, and since each taxing dis-

trict receives so much of the tax as is derived from the assessment of Class II property situated within the taxing district, *N. J. S. A.* 54:29A–24(a), the tax upon that class of property is a tax allotted and paid to taxing districts within the meaning of *Art.* VIII, § I, ¶ 1(a) of the Constitution which reads:

"Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value; and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district."

The railroad tax statute provides for the assessment of Class II property according to the same standard of value and at the general tax rate of the taxing district; hence the constitutional mandate is met in those regards. However, Susquehanna alleges the statute discriminates against Class II property in the following ways, thereby violating the requirement that property "be assessed under general laws and by uniform rules":

(1) Taxes levied locally on nonrailroad real property are imposed on each parcel of land and are not a personal obligation of the owner, *Borough of Wrightstown v. Salvation Army*, 97 *N. J. L.* 89 (*Sup. Ct.* 1922), whereas Class II railroad taxes are made a lien on "the revenues and all the real and personal property" of the railroad within the State, *N. J. S. A.* 54:29A–54, and a "debt" for which an action may be maintained, *N. J. S. A.* 54:29A–55.

(2) Taxes levied locally on nonrailroad real property are collectible only by sale of the specific parcel of real property, *N. J. S. A.* 54:5–19 *et seq.*, whereas Class II railroad taxes may be collected by suit for the debt, as already mentioned in (1) above; by an action to enforce the lien against all property of the railroad, *N. J. S. A.* 54:29A–58; by appointment of a receiver to enforce the lien, *N. J. S. A.* 54:29A–61; and by the issuance by the State Comptroller of a certificate and

the entry of the tax liability among docketed judgments in the Superior Court as was done in the present case pursuant to *N. J. S. A.* 54:29A–57.

(3) Delinquent taxes assessed locally on nonrailroad real property bear interest at a rate fixed by the taxing district, not in excess of 8% per annum, *R. S.* 54:4–67, whereas delinquent Class II railroad taxes bear interest at 1% per month, *N. J. S. A.* 54:29A–53.

(4) Susquehanna says the owner of nonrailroad real property assessed locally may withhold payment pending the outcome of an appeal from the assessment, for which proposition it claims support in *Hahne Realty Corp. v. City of Newark,* 119 *N. J. L.* 12 (*E. & A.* 1937), whereas a railroad must pay in full notwithstanding the pendency of an appeal, *N. J. S. A.* 54:29A–56, unless it is able to obtain a stay under *N. J. S. A.* 54:29A–38. The latter section provides that as a condition for prosecuting a proceeding in lieu of prerogative writ, a railroad shall pay the amount of taxes not in substantial controversy, which amount shall be fixed by the Superior Court if the parties disagree, the collection of the balance to be stayed until final determination in that court.

These alleged discriminations antedate both the *Constitution of* 1947 and the Railroad Tax Law of 1948. As we shall presently see, substantially equivalent treatment of Class II property was upheld under the tax clause of the prior Constitution, so that the question really is whether the present Constitution was intended to make a change in that regard. The history of the subject shows it was not.

In 1884 the Legislature enacted *c.* 101, "An Act for the taxation of railroad and canal property," which provided for the assessment by a State agency of all property used for railroad purposes. That statute divided railroad property into classes essentially as they are today and provided for a tax upon Class II property for the use of local government. The act was assailed under *Art.* IV, § VII, ¶ 12, added by amendment in 1875 to the *Constitution of* 1844, which read:

"Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value."

It was urged that this tax clause forbade such separate treatment of railroad property. The statute, however, was sustained, *State Board of Assessors v. Central R. Co.*, 48 *N. J. L.* 146 (*E. & A.* 1886), the court holding that property used for railroad purposes was a proper class for assessment for taxation.

The 1884 statute was amended by the Duffield Act of 1905 (*c.* 91) to provide that Class II property shall be taxed at the local municipal rate calculated after including in the municipal ratables the amount of the valuations of Class II property as determined by the State Board of Assessors. The statute, as thus amended, was attacked in *Bergen & Dundee R. Co. v. State Bd. of Assessors*, 74 *N. J. L.* 742 (*E. & A.* 1907). The basis of the attack was pretty much the same as the one now before us. In the words of the opinion in that case (at *p.* 749):

"It is argued that the Duffield act introduces into the tax system certain diversities as between different properties in the same taxing district that are listed in the general aggregate for the purpose of fixing the local rate and charged with the resulting rate of tax; and this on the ground that there are two sets of valuations, one fixed by the state board and the other by the local assessor, different kinds of return required from the taxpayer, different penalties for non-return, different dates for valuation, different modes of review, different modes of enforcement, and different rates of interest upon arrears. But similar infirmities (if they were such) inhered in the original act of 1884. Indeed, if the constitutional requirement of uniform rules necessitates an identity of procedure in such details as these, it would have subverted the entire scheme of the acts of 1884 and 1888."

The court there made it clear that the tax clause left the Legislature free to prescribe appropriate machinery for the assessment and collection of taxes.

Shortly thereafter the Court of Errors and Appeals struck down a supplement to the railroad tax law under which Class II property would be assessed, like all other local property, by the local assessor, the thesis of the decision being that all

property in railroad use was a single class for the assessment process and must be dealt with as such. *Central R. Co. v. State Bd. of Assessors*, 75 *N. J. L.* 771 (*E. & A.* 1908). That case accordingly held invalid a statute which would deal with Class II property in a way for which Susquehanna here contends.

The point to be stressed for present purposes is that those early cases established the proposition that with respect to machinery for assessment or collection the tax clause of 1875 left the Legislature free to employ appropriate techniques in the light of the subject matter. That view was reiterated as late as 1941 in *Jersey City v. Martin*, 126 *N. J. L.* 353, 359–360 (*E. & A.* 1941).

The genesis of the revision of the tax clause in the *Constitution of* 1947 was in part the case of *Jersey City v. State Bd. of Tax Appeals*, 133 *N. J. L.* 202 (*Sup. Ct.* 1945), modified in other respects *sub nom. Jersey City v. Kelly*, 134 *N. J. L.* 239 (*E. & A.* 1946). Involved was a 1941 statute (*c.* 291) which provided for the taxation of railroad property at a flat rate of $3.00 per $100 of assessed valuation. No one questioned the constitutional power to classify railroad property for assessment or collection purposes. Rather the 1941 law was attacked upon the thesis that the Constitution required equality in the distribution of the burden of a tax, and hence the levy upon property in railroad use must reflect a *pro rata* allocation of the cost of government. That contention was rejected, the court concluding the power to classify railroad property included the power to determine how large a burden should be borne by property so used.

It was this view of the tax clause that led to the proposal at the Constitutional Convention of 1947 against preferential treatment of a class of taxable real property. See 5 *Proceedings, Constitutional Convention of* 1947, *pp.* 560, 576. The tax clause was in part refashioned to that very end. *Switz v. Kingsley*, 37 *N. J.* 566, 574–576 (1962). *Article* VIII, § I, ¶ 1 of the *Constitution of* 1947 accordingly read (we are not concerned with a later amendment):

"Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value; and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district."

The second sentence ended the preferential treatment of railroad property taxable for local use by requiring that all property so taxable shall be assessed according to the same standard of value and at the general tax rate of the taxing district, whether the assessment be made by the local assessor or at the State level. But the *Constitution of* 1947 made no change in then established power to classify property in railroad use for the purposes of valuation and collection.

The Railroad Tax Law of 1948 was enacted to satisfy the mandate of the *Constitution of* 1947 that all real property taxable for local use shall be assessed according to the same standard of value and taxed at the general rate of the taxing district. That statute did not innovate the separate treatment of property in railroad use either as to methodology of assessment or remedies for collection. Hence the constitutional issue Susquehanna presses is the same one resolved in the cases involving the 1884 statute.

We see no reason to depart from the prior holdings that property used for railroad purposes may rationally be constituted a separate class for the purpose of assessment and collection of taxes. The Legislature could find that valuation of such property is more fairly made when its several parts are viewed in relation to the whole and when made by a single authority rather than numerous local assessors acting separately. As to enforcement or collection, the Legislature could find it would not be sensible to provide for sales of parcels of railroad property under local liens. A railroad being a public utility with the burdens as well as the benefits of its franchise, it is reasonable to enforce collection in a way likely to induce payment without interfering with service. The lien upon all assets for the total tax, the imposition of

personal liability, the recording of the claim with docketed judgments, the appointment of a receiver—all of these are reasonably related to the nature and use of property involved.

And it is reasonable to impose a higher rate of interest upon railroad taxes than upon taxes on other real property. Delay in payment of taxes results in sundry losses to government. There may be the cost of borrowing money, the cost of handling delinquent accounts, or the denial of needed public services. Railroad taxes being substantial, government is more dependent upon their prompt payment than in the case of the usual nonrailroad taxpayer. If the interest rate is low, a substantial taxpayer might be tempted to make the public its "involuntary" banker, *Meilink v. Unemployment Reserves Comm.*, 314 *U. S.* 564, 567, 62 *S. Ct.* 389, 86 *L. Ed.* 458, 461 (1942), or to withhold payment to force settlements of tax controversies. At one time, amounts withheld by railroad taxpayers became a matter of public concern. See *Wilentz v. Hendrickson*, 133 *N. J. Eq.* 447, 450, 468–472 (*Ch.* 1943), affirmed 135 *N. J. Eq.* 244 (*E. & A.* 1944). Hence the Legislature could validly find the public loss from delay in payment of railroad taxes exceeds the loss due to nonpayment of local taxes generally.

For like reasons the Legislature could conclude a railroad taxpayer should not be able to decide for itself how much taxes to withhold pending litigation but that rather, as provided in *N. J. S. A.* 54:29A–38, the decision should be made by a court. Hence, if it be assumed to be correct as Susquehanna contends, that *Hahne Realty Corp. v. City of Newark, supra,* 119 *N. J. L.* 12, means other appealing taxpayers may decide how much to withhold, still the differences already mentioned between the average railroad taxpayer and the average nonrailroad taxpayer are sufficient to sustain this alleged difference in treatment.

## II.

Susquehanna asserts it was denied due process of law by the *ex parte* issuance of the certificate by the State

Comptroller and the *ex parte* entry made among the docketed judgments in the Superior Court pursuant to *N. J. S. A.* 54:29A–57 quoted above.

The grievance claimed is the failure to provide for notice and hearing before judgment. But *N. J. S. A.* 54:29A–57 expressly provides the entry of the tax indebtedness among docketed judgments shall be "without prejudice to the taxpayer's right of appeal." Thus the taxpayer may continue to pursue its administrative and judicial remedies under *N. J. S. A.* 54:29A–31 and 36. There being that opportunity for hearing, the mere entry of a "judgment" does not deny due process of law. "Due process requires that there be an opportunity to present every available defense; but it need not be before the entry of judgment." *American Surety Co. v. Baldwin,* 287 *U. S.* 156, 53 *S. Ct.* 98, 77 *L. Ed.* 231 (1932).

▪ Of course the entry of judgment is designed to effect collection and to remit the taxpayer, if successful, to a refund by way of a credit upon taxes later assessed as provided in *N. J. S. A.* 54:29A–49, unless the taxpayer obtains a stay upon paying the amount determined by the Superior Court not to be in substantial controversy pursuant to *N. J. S. A.* 54:29A–38. Still, due process does not forbid compulsion to pay taxes now and litigate later. Referring to a federal statute which barred a suit to restrain assessment or collection of any tax, the United States Supreme Court said in *Taylor v. Secor* (State Railroad Tax Cases), 92 *U. S.* 575, 23 *L. Ed.* 663, 673 (1876) :

"* * * It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice."

See *Enochs v. Williams Packing & Navigation Co., Inc.,* 370 *U. S.* 1, 7, 82 *S. Ct.* 1125, 8 *L. Ed.* 2d 292, 296 *n.* 6 (1962). For this reason there appears to be no dissent from the propo-

sition that a State may require payment of a tax prior to an opportunity to litigate its correctness. See *Enochs v. Williams Packing & Navigation Co., Inc., supra,* 370 *U. S.* 1, 82 *S. Ct.* 1125, 8 *L. Ed.* 2d 292; *Shelton v. Platt,* 139 *U. S.* 591, 11 *S. Ct.* 646, 35 *L. Ed.* 273 (1891); *Snyder v. Marks,* 109 *U. S.* 189, 3 *S. Ct.* 157, 27 *L. Ed.* 901 (1883); *Steinhagen Rice Milling Co. v. Scofield,* 87 *F.* 2d 804 (5 *Cir.* 1937), *cert.* denied 300 *U. S.* 663, 57 *S. Ct.* 494, 81 *L. Ed.* 872 (1937); *De Pauw University v. Brunk,* 53 *F.* 2d 647 (*W. D. Mo.* 1931), affirmed *per curiam* 285 *U. S.* 527, 52 *S. Ct.* 405, 76 *L. Ed.* 924 (1931); *Williams v. Board of Supervisors of Albany County* (Exchange Bank Cases), 21 *F.* 99 (*N. D. N. Y.* 1884), affirmed 122 *U. S.* 154, 7 *S. Ct.* 1244, 30 *L. Ed.* 1088 (1887); *Powell v. Gleason,* 50 *Ariz.* 542, 74 *P.* 2d 47, 114 *A. L. R.* 838 (*Sup. Ct.* 1950); *Modern Barber Colleges v. California Emp. St. Comm.,* 31 *Cal.* 2d 720, 192 *P.* 2d 916 (*Sup. Ct.* 1948); *Old Colony R. Co. v. Assessors of Boston,* 309 *Mass.* 439, 35 *N. E.* 2d 246 (*Sup. Jud. Ct.* 1941); *Eddy v. Township of Lee,* 73 *Mich.* 123, 40 *N. W.* 792 (*Sup. Ct.* 1888); *Exchange Oil Co. v. State,* 80 *Okl.* 52, 193 *P.* 999 (*Sup. Ct.* 1920); *Moore v. Langton,* 92 *R. I.* 141, 167 *A.* 2d 558 (*Sup. Ct.* 1961); *Zimmerman v. Corson County,* 39 *S. D.* 167, 163 *N. W.* 711 (*Sup. Ct.* 1917); *Richford Sav. Bank & Trust Co. v. Thomas,* 111 *Vt.* 393, 17 *A.* 2d 239 (*Sup. Ct.* 1941); 1 *Cooley on Taxation* § 143 (4*th* ed. 1924); Annotation, 77 *A. L. R.* 629 (1932); 16A *C. J. S. Constitutional Law* § 650a(2), *p.* 977 (1956).

Susquehanna seems not to dispute that proposition seriously but says the exaction of immediate payment would take property without due process of law if a refund later obtained does not include interest upon the amount of the excess payment. Susquehanna says our cases would deny interest for want of express statutory authority, see *Hahne Realty Corp. v. City of Newark, supra,* 119 *N. J. L.* 12; *Edgewater v. Corn Products Refining Co.,* 136 *N. J. L.* 664, 670 (*E. & A.* 1947); *Central R. R. Co. v. Neeld,* 26 *N. J.* 188, 196 (1958); *Milmar Estate, Inc. v. Borough of Fort Lee,* 36

*N. J. Super.* 241, 247–248 (*App. Div.* 1955), and from that premise advances the due process argument.

There are cases in which the absence of a provision for interest on tax refunds was deemed a factor in deciding whether collection of a tax should be enjoined by a court of equity pending resolution of its validity. See *Hopkins v. Southern Calif. Telegraph Co.*, 275 *U. S.* 393, 48 *S. Ct.* 180, 72 *L. Ed.* 329 (1928); *United States v. Livingston*, 179 *F. Supp.* 9, 15 (*E. D. S. C.* 1959), affirmed *per curiam* 364 *U. S.* 281, 80 *S. Ct.* 611, 4 *L. Ed. 2d* 1719 (1960); *Mullaney v. Hess*, 189 *F. 2d* 417, 420 (9 *Cir.* 1951), *cert.* denied 348 *U. S.* 836, 75 *S. Ct.* 50, 99 *L. Ed.* 659 (1954); *Nutt v. Ellerbe*, 56 *F. 2d* 1058 (*E. D. S. C.* 1932); *Procter & Gamble Distributing Co. v. Sherman*, 2 *F. 2d* 165 (*S. D. N. Y.* 1924); *General Electric Co. v. City of Passaic*, 48 *N. J. Super.* 604 (*Ch. Div.* 1958). Whether there is a constitutional requirement that interest be payable may be a different question. *Morrison-Knudsen Co. v. State Board of Equalization*, 35 *F. Supp.* 553, 557 (*D. Wyo.* 1940), speaks in those terms. Here it suffices to say that if due process demands payment of interest, we would readily find the statutory refund credit includes the required allowance. *Cf. Zimmerman v. Corson County, supra,* 39 *S. D.* 167, 163 *N. W.* 711, 713. In short, the statute would not fall on that account, and this being so, the constitutional issue need not be resolved in this case.

The final point made by Susquehanna is that the statute violates *Art.* III, ¶ 1 of the *Constitution of* 1947 which provides that no branch of government shall exercise powers properly belonging to either of the other branches. Susquehanna charges that judicial power is attempted to be given the executive branch by *N. J. S. A.* 54:29A–39 which provides that in any proceeding other than the administrative or judicial review of the assessment, the certificate and report of the Director of the Division of Taxation to the State Comptroller "shall be conclusive and shall have the force and effect of a judgment of a court of record having competent jurisdic-

tion," and also by *N. J. S. A.* 54:29A–57, already quoted above, which provides for the entry of that "judgment" among the docketed judgments of the Superior Court.

Susquehanna cites no authority to support its claim that the province of the judiciary is thereby invaded. We see no reason to question the Legislature's power to invest a tax assessment with the characteristics of a judgment and to provide for its collection by the same remedies available for the enforcement of a judgment. Recording the assessment among the records of the clerk of a court merely serves governmental convenience. The statute does not purport to clothe executive officials with a final authority to decide challenges to the validity of the assessment; such issues are left to the judicial process.

The actions under review are affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.