KUSKIN, J.T.C.
Plaintiff filed a complaint with the Tax Court seeking review of a judgment of the Passaic County Board of Taxation which affirmed the 1999 tax assessment on his property. Defendant moves to dismiss the complaint on the grounds that, under the definition of tax delinquency in N.J.S.A. 54:4-67, plaintiff failed to comply with the tax payment requirements contained in N.J.S.A. 54:51A-lb. This latter statute provides in relevant part, that “[a]t the time that a complaint has been filed with the Tax Court seeking review of judgment of county tax boards, all taxes or any installments thereof then due and payable for the year for which review is sought must have been paid.” N.J.S.A. 54:4-67 defines a tax delinquency as follows:
“Delinquency” means the sum of all taxes and municipal charges due on a given parcel of properly covering any number of quarters or years. The property shall remain delinquent, as defined herein, until such time as all unpaid taxes, including subsequent taxes and liens, together with interest thereon shall have been fully paid and satisfied. The delinquency shall remain notwithstanding the issuance of a certificate of sale pursuant to R.S. 54:5-32 and R.S. 54:5-46, the payment of delinquent tax by the purchaser of the total property tax levy pursuant to S 16 of P.L. 1997, c. 99 (C. 54:5-113.5) and for the purposes of satisfying the requirements for filing any tax appeal with the county board of taxation or the State tax court.
[N.J.S.A. 54:4-67.]
Plaintiff moves for judgment declaring this definition unconstitutional as applied to tax appeals.
The filing date of plaintiffs complaint was July 22, 1999. On June 22, 1999, defendant conducted a tax sale as a result of a tax delinquency for 1997 and 1999 with respect to the subject property. A third party purchased the tax sale certificate for a purchase price which included the principal amount of the delinquency, together with interest and costs of the sale. See N.J.S.A. 54:5-25 and -31. The purchaser then paid the taxes due after the period covered by the tax sale certificate, so that, as of July 22, 1999, defendant had received, from a combination of the proceeds of the *101 tax sale and payments by the purchaser, “all taxes or any installments thereof then due and payable.” N.J.S.A. 54:51A-1b. Defendant asserts that, notwithstanding its receipt of these amounts, under N.J.S.A. 54:4-67 taxes remained delinquent for tax appeal purposes.
In challenging the constitutionality of the definition of tax delinquency in N.J.S.A. 54:4-67 as applied to tax appeals, plaintiff asserts that the definition effects a denial of due process and equal protection under the Fourteenth Amendment to the United States Constitution, U.S. Const amend. XIV, § 1, and under Article I of the New Jersey Constitution, N.J. Const. art. I, § 1. See Greenberg v. Kimmelman, 99 N.J. 552, 494 A.2d 294 (1985) (stating that Article I of the New Jersey Constitution, although it does not contain the phrases “due process” and “equal protection,” “safeguards values like those encompassed by the principles of due process and equal protection.” Id. at 568, 494 A.2d 294.). Pursuant to R. 4:28-4(a), plaintiff notified the Attorney General of New Jersey who intervened, pursuant to R. 4:28—4(d), to defend the constitutionality of N.J.S.A. 54:4-67.
In Greenberg v. Kimmelman, supra, 99 N.J. 552, 494 A.2d 294, the Supreme Court explained that, although both the due process clause and the equal protection clause
are available as a means of protecting against unjustified state regulation of individual rights, they protect against different evils. When a court invalidates a statute on due process grounds, the court is saying, in effect, that the statute seeks to promote the state interest by impermissible means. In contrast, when a court declares a statute invalid on equal protection grounds, it is not saying that the legislative means are forbidden, but that the Legislature must write evenhandedly.
[Id. at 562, 494 A 2d 294 (citations omitted).]
Whether the challenge to a statute relates to due process or equal protection, the court must accord the statute a presumption of constitutionality.
With respect to the standard for reviewing the constitutionality of state statutes, the Court will afford every possible presumption in favor of an act of the Legislature. Where alternative interpretations of a statute are equally plausible, the view sustaining the statute’s constitutionality is favored. Only a statute “clearly repugnant to the Constitution” will be declared void.
*102 [Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 492-93, 628 A.2d 288 (1993), cert. denied, 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994) (citations omitted).]
We do not sit as a body reviewing the wisdom of legislative decisions, whether new or old, but can, determine only whether legislative action is within constitutional limitations. If the statute does not violate the Constitution but is merely unwise or based on bad policy, then ... it is for the Legislature rather than this Court to deliver a finishing blow to it.
[Piscataway Tp. Bd. of Educ. v. Caffiero, 86 N.J. 308, 318, 431 A.2d 799 (1981), appeal dismissed for tvant of a substantial federal question, 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed.2d 470 (1981) (citations omitted).]
A due process challenge to a statute can be based on substantive or procedural grounds.[1] The distinction between the two has been described as follows:
Procedural due process guarantees only that there is a fair decision-making process before the government takes some action directly impairing a person’s life, liberty or property. This aspect of the due process clause does not protect against the use of arbitrary rules of the law which are the basis of those proceedings.
By “substantive review” we mean the judicial determination of the compatibility of the substance of a law or governmental action with the Constitution. The Court is concerned with the constitutionality of the underlying rule rather than with the fairness of the process by which the government applies the rule to an individual.
[Ronald D. Rotunda & John E. Nowak, 2 Treatise on Constitutional. Law § 14.6 (3rd ed.1999).]
Procedural; due process requires notice and “an opportunity to be heard at a meaningful time and in a meaningful manner.” Doe v. Poritz, 142 N.J. 1, 106, 662 A.2d 367 (1995).
The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.
[Boddie v. Connecticut, 401 U.S. 371, 378-79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (footnotes omitted).]
Substantive due process, as applied to a statute such as N.J.S.A. 54:4-67, requires that the statute have a rational basis.
*103 Insofar as most rights are concerned, a state statute does not violate substantive due process if the statute reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory. Briefly stated, if a statute is supported by a conceivable rational basis, it will withstand a substantive due process attack.
[Greenberg v. Kimmelman, supra, 99 N.J. at 563, 494 A.2d 294 (citations omitted).]
See also Auge v. New Jersey Dep’t. of Corrections, 327 N.J.Super. 256, 266, 743 A.2d 315 (App.Div.2000) (setting forth the standard of judicial review applicable to substantive due process challenges as articulated in decisions of the New Jersey and United States Supreme Courts).
Constitutional challenges based on equal protection involve principles similar to those applicable to due process challenges. See Greenberg v. Kimmelman, supra, 99 N.J. at 569, 494 A.2d 294 (noting that analyses under the due process and equal protection clauses, “while proceeding along parallel lines, may overlap.”). Thus, in order for a statute to withstand an equal protection attack, the classification established by the statute must have a rational basis.
[T]he court must determine whether there exists any conceivable basis to justify the scheme of classification. In [Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 160 A.2d 265 (1960)], Chief Justice Weintraub stated:
As stated in [New Jersey Restaurant Ass’n. v.] Holderman [24 N.J. 295, 131 A.2d 773 (1957)], a discrimination which in the nature of the subject matter would otherwise be invidious may be relieved of that character if, generally speaking, a rational basis may be found for it in terms of degrees of evil or in the practical problems inherent in the process of legislating or in enforcement. .. [32 N.J. at 219, 160 A.2d. 265]
[Mack Paramus Co. v Mayor and Council of Paramus, 228 N.J.Super. 234, 251, 549 A.2d 474 (Law Div.1988).]
In the context of taxation, the Appellate Division described the functioning of equal protection as follows:
Equal protection does not require that all persons must be treated identically, but rather that “similar people will be dealt with in a similar manner and that people of different circumstances will not be treated as if they were the same.” And, unless legislation creates an inherently suspect classification, a legislative classification will be presumed valid, even if it has the effect of treating some differently from others, so long as it bears some rational relationship to a permissible state interest. It must be noted that in classifying subjects for different treatment in the field of taxation, a Legislature possesses the greatest freedom in classification.
*104 [Schneider v. City of East Orange, 196 N.J.Super. 587, 594, 483 A.2d 839 (App.Div.1984), aff'd o.b., 103 N.J. 115, 510 A.2d 1118 (1986), cert. denied, 479 U.S. 824,107 S.Ct. 97, 93 L.Ed.2d 48 (1986) (citations omitted).]
Plaintiffs constitutional challenge relates to the following specific provisions in N.J.S.A. 54:4-67 (hereinafter referred to as the “Tax Sale Provisions”):
The delinquency shall remain notwithstanding the issuance of a certificate of sale pursuant to R.S. 54:5-32 and R.S. 54:5-46, the payment of delinquent tax by the purchaser of the total property tax levy pursuant to section 16 of P.L. 1997 c. 99 (C. 54:5-113.5) and for the purposes of satisfying the requirements for filing any tax appeal with the county board of taxation or the State tax court.
The statutes referenced in the Tax Sale Provisions relate to the acquisition of a tax sale certificate by a third-party purchaser and not by the selling municipality. N.J.S.A. 54:5-32 refers to a sale to “such person as wall purchase the property, subject to redemption at the lowest rate of interest, but in no case in excess of 18% per annum.” A sale to the municipality, where it is the successful bidder or where there is no other purchaser, is governed by N.J.S.A. 54:5-34, not by N.J.S.A. 54:5-32. A third-party purchase is also contemplated by N.J.S.A. 54:5-113.5, which provides for a bulk sale of a municipality’s “total property tax levy” to “a third party at a public sale.” The other statute to wdiich the Tax Sale Provisions refer, N.J.S.A. 54:5—46, sets forth procedures for delivery of a tax sale certificate to a third-party purchaser and to a municipality. In the context of the references in the Provisions to N.J.S.A. 54:5-32 and N.J.S.A. 54:5-113.5, the reference to N.J.S.A. 54:5-46 is properly construed as relating to delivery of a certificate to a third-party purchaser.
For the reasons set forth below, I conclude that, as applied to circumstances (such as those before this court) where a thud party purchases a tax sale certificate, the Tax Sale Provisions have a conceivable rational basis, and, therefore, satisfy the requirements of substantive due process, but the Provisions violate the requirements of procedural due process.
When appropriate, a court may, and should, salvage a statute by interpreting it in a manner which excludes unconstitutional applications. A court may “excise[ ] constitutional defects or engraft[ ] new meanings” to insure the survival of a statute, but *105 “only where it is determined that the Legislature would have wanted the statute to survive as modified rather than to succumb to constitutional infirmities.” NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 28, 543 A.2d 10 (1988). As discussed below, precluding an appeal of a tax assessment when taxes are unpaid is constitutional. The Tax Sale Provisions, therefore, would be constitutional if their applicability were limited to circumstances where the municipality selling a tax sale certificate acquires the certificate, leaving the tax delinquency unpaid. In order to determine whether the Legislature “would have wanted” the Tax Sale Provisions salvaged by an interpretation so limiting their applicability, an examination of legislative history is necessary.
Before enactment of the Tax Sale Provisions, payment to the municipality by the purchaser of a tax sale certificate was recognized as constituting payment of taxes for tax appeal purposes. In Freehold Office Park, Ltd. v. Freehold Township, 12 N.J.Tax 433 (Tax 1992), the court held that “[t]he receipt of tax revenues by a municipality upon the sale of a tax sale certificate to a third party satisfies the purpose of N.J.S.A 54:3-27 by providing tax revenues to the municipality without regard to the pendency of a tax appeal.” Id. at 440. In support of this holding, the court explained that the tax payment requirements of N.J.S.A. 54:3-27 impose the tax obligation on the property, not on the taxpayer.
Since unpaid taxes are a lien against the property and not the personal obligation of the property owner, N.J.S.A. 54:3-27 must mean that the tax revenues due to a municipality may be paid by anyone. Once the tax revenues are received by a municipality in the timely manner prescribed by the statutoiy requirements as interpreted by the case law, a local property tax appeal may be prosecuted against the municipality.
[Id. at 441 (citations omitted).]
The court also noted that the purpose of the tax sale procedure is to provide a method for the municipality to collect taxes. Id. at 441, citing Fidelity Union Trust Co. v. Newark, 11 N.J.Super. 205, 208, 77 A.2d 820 (Law Div.1950) and Sonderman v. Remington Const. Co., 127 N.J. 96, 109, 603 A.2d 1 (1992).
The Appellate Division dealt with the issue of tax payment by a third-party purchaser of a tax sale certificate in Echelon Glen *106 Coop., Inc. v. Voorhees Township., 275 N.J.Super. 441, 646 A.2d 498 (App.Div.), certif. denied, 138 N.J. 272, 649 A.2d 1291 (1994). After discussing the Freehold Office Park decision in detail, including its determination that dismissing an appeal after the municipality had received payment from the sale of a tax sale certificate would not in any way enhance the municipal revenues, the Appellate Division concluded:
We agree with the Tax Court that as the purpose of N.J.S.A. 54:3-27 is to insure municipal revenues during a tax appeal, dismissal of plaintiffs appeal was not appropriate where the municipality did, in fact, receive those revenues by the time the non-jurisdictional motion to dismiss was filed.[2]
[Id. at 450, 646 A.2d 498.]
After the Freehold Office Park and Echelon Glen decisions, the Legislature amended N.J.S.A. 54:4-67 to define a tax delinquency as continuing after the sale of a tax sale certificate. L. 1994, c. 32, § 4. In Caven Point Associates v. Jersey City, 14 N.J.Tax 496 (Tax 1995), the Tax Court held that the 1994 statutory amendment did not provide specifically that the delinquency continued for purposes of the tax payment requirements applicable to tax appeals, and that, in the absence of a specific reference to those requirements, the amendment’s definition of “delinquency” was not applicable to tax appeals. In 1997, the Legislature responded to the Caven Point Associates decision by amending the definition of delinquency to make it expressly applicable “for the purposes of satisfying the requirements for filing any tax appeal with the county board of taxation or the State tax court.” L. 1997, c. 99, § 4.
*107 The foregoing legislative history demonstrates that the Legislature would not have wanted the Tax Sale Provisions to survive if they precluded a tax appeal only when a selling municipality acquired its own tax sale certificate. Furthermore, because N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1b preclude appeals when taxes are unpaid, interpreting the Tax Sale Provisions to apply to circumstances where taxes are unpaid as a result of a municipality’s purchase of its tax sale certificate would make the Provisions redundant. Such an interpretation should be avoided.
To be sure, it is our duty to construe a statute so as to render it constitutional if it is reasonably susceptible to such an interpretation. However, the value informing this canon of statutory interpretation is to save the statute and thus cany out the legislative will. Here, while the County’s interpretation .. would avoid a constitutional challenge, it would also effectively gut [the statute! and render it meaningless verbiage. In our view, “saving” the statute from constitutional attack by rendering it impotent is no save at all.
[Newark v. Board of Taxation, 809 N.J.Super. 476, 486, 707 A.2d 493 (App.Div. 1998) (citation omitted).]
In response to plaintiffs due process contentions, defendant and the intervenor assert that: a) the Tax Sale Provisions satisfy the requirements of substantive due process because they have a rational basis, and b) the Provisions satisfy the requirements of procedural due process because they are simply a version of the requirement that, in order to contest taxes, one must pay first and litigate later. I will consider the substantive due process issue first.
The intervenor describes the rational basis for the Tax Sale Provisions as follows:
The Legislature is seeking to encourage timely payment of property tax assessments in order to protect the municipalities from the uncertainty of collection, alleviate the financial hardship that results from late or non-payment of taxes and foster predictability and stability of municipal finance.
[Intervenor’s Brief In Opposition to Plaintiffs Cross-Motion To Declare N.J.S.A. 5414-67 Unconstitutional at 15-16.]
Neither the intervenor nor defendant has explained how the Tax Sale Provisions would achieve “timely payment of property tax assessments.” Presumably, the following explanation is consistent with the intervenor’s description. N.J.S.A. 54:3-27 and N.J.S.A 54:51A-1b contain tax payment requirements in order for an appeal to be filed. In the absence of the Tax Sale Provisions, a *108 property owner could elect not to pay taxes and municipal charges on a timely basis, resulting in a tax sale, and expect that he or she will be able to preserve a right to appeal merely by paying the deficiency, if any, between the amount of taxes and municipal charges required to be paid by N.J.S.A. 54:3-27 or N.J.S.A. 54:51A-1b and the amount received by the municipality from the tax sale. The Tax Sale Provisions thwart such an expectation by precluding an appeal while a tax sale certificate is outstanding. Thus, as a result of the Tax Sale Provisions, the property owner, in order to preserve appeal rights will be encouraged to pay delinquent taxes before a tax sale occurs. The owner will not rely on preserving the right to appeal by redeeming a tax sale certificate because redemption will be far more costly than making timely tax payments. Redemption will require payment of interest, probably at the rate of 18% per annum, plus other amounts as provided by statute.
In determining whether a statute satisfies the requirements of substantive due process, this court may not inquire as to the wisdom or efficacy of the legislative enactment, but only as to whether “ ‘the means selected [by the Legislature] ... bear a rational relation to the legislative object sought to be obtained.’ ” Piscataway Tp. Bd. of Educ. v. Caffiero, supra, 86 N.J. at 318, 431 A.2d 799 (citations omitted). The intervenor has articulated a rationale for the Tax Sale Provisions, and I have attempted to articulate the practical workings of that rationale. Not every rationale constitutes a rational basis. In Town of Secaucus v. Hudson County Board of Taxation, supra, 133 N.J. 482, 628 A.2d 288, our Supreme Court, in seeking “any conceivable rational basis” for N.J.S.A. 18A:54-37, hypothesized two purposes for the statute and concluded that “[a]fter careful scrutiny of the specific facts of this case and the statute under challenge, how [the statute] realizes either of those purposes is difficult to see.” Id. at 495, 628 A.2d 288. The Court further stated:
To accept the classifications contained in N.J.S.A. 18A:54-37 as having a rational basis, one must imagine that the Legislature had some reasonable ground for encouraging the development of local vocational programs only in the most-densely-populated county in the state with a total population below 700,000 and that the Legislature had reasonable grounds for concluding that only those *109 programs in existence for at least twenty years were of sufficient quality to be worthy of financial encouragement through tax relief. Those conclusions seem to us to stretch credulity beyond reasonable limits.
[Id. at 498, 628 A.2d 288.]
Here, intervenor’s explanation (as amplified by the court) of the rational basis for the Tax Sale Provisions very nearly stretches credulity beyond reasonable limits. The likelihood that a property owner would be motivated to pay property taxes in a timely manner because, once a tax sale occurs, no appeal could be filed without incurring the costs of redemption of a tax sale certificate is remote at best. It is conceivable, however, that the Tax Sale Provisions could have such a motivational impact. Because I may invalidate the Provisions on substantive due process grounds only if the Provisions lack any conceivable rational basis, I am constrained to conclude that the Provisions satisfy the requirements of substantive due process.
I turn now to a consideration of procedural due process. Both the New Jersey Supreme Court and United States Supreme Court have held that a requirement for payment of taxes as a condition to contesting their amount is constitutional. In New York, Susquehanna and Western R.R. Co. v. Vermeulen, 44 N.J. 491, 210 A.2d 214 (1965), the New Jersey Supreme Court concluded that “due process does not forbid compulsion to pay taxes now and litigate later.” Id. at 501, 210 A.2d 214. In General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 416 A.2d 37 (1980), the Court stated that it had “no doubt that the Legislature may require a corporation ‘to pay taxes now and litigate later.’ ” Id. at 129, 416 A.2d 37 (citing New York, Susquehanna, and Western R.R. Co. v. Vermeulen). A recent articulation of the “pay now, litigate later” principle by the United States Supreme Court appeared in McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), where the Court stated as follows:
[Wlhereas “|w]e have described The root requirement’ of the Due Process Clause as being' That an individual be given an opportunity for a hearing before he is deprived of any significant property interest,’ ” it is well established that a State need not provide predeprivation process for the exaction of taxes. Allowing taxpayers to litigate their tax liabilities prior to payment might threaten a *110 government’s financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult. To protect government’s exceedingly strong interest in financial stability in this context, we have long held that a State may employ various financial sanctions and summary remedies, such as distress sales, in order to encourage taxpayers to make timely payments prior to resolution of any dispute over the validity of the tax assessment.
[Id. at 37, 110 S.Ct. at 2250-51, 110 L.Ed.2d at 36 (citations omitted) (footnotes omitted).]
The explanation for “pay now, litigate later” set forth in Schneider v. City of East Orange, supra 196 N.J. Super. 587, 483 A.2d 839, is similar to that in McKesson.
Plaintiffs’ opportunity for appropriate review of the county board determination is not impaired by the added procedural limitation that taxes then due be paid before the jurisdiction of the Tax Court can be invoked. The interest of the municipality in receiving timely payment of taxes is clearly significant and outweighs any incidental burden imposed upon plaintiffs, and other taxpayers similarly situated, by this jurisdictional requirement. It is well settled that a taxpayer may be required to pay the taxes then due as a condition to litigating the amount due.
[Schneider v. City of East Orange, supra, 196 N.J.Super. at 595-96, 483 A.2d 839 (citations omitted).]
Accord Muscarelle v. Saddle Brook Tp., 15 N.J.Tax 164 (App.Div. 1994). See also Muscarelle v. Saddls Brook Tp., 14 N.J.Tax 453, 455 (Rimm, J.T.C., concurring) and at 458 (Hamill, J.T.C., concurring) (Tax 1995).
The Tax Sale Provisions preclude the filing of an appeal as long as a tax sale certificate remains outstanding. Consequently, once a tax sale certificate has been sold to a third party, a tax appeal may be filed only if the property owner, or another party authorized by N.J.S.A. 54:5-54, redeems the certificate. The municipal tax collector receives the redemption payment required by statute and is obligated to remit “all redemption monies” to the purchaser of the certificate being redeemed. N.J.S.A. 54:5-57. The municipality, therefore, does not retain any portion of the redemption payment, and the municipal treasury receives no benefit whatsoever from the redemption. See Freehold Office Park, Ltd. v. Freehold Tp., supra, 12 N.J.Tax at 442 (noting that a redemption payment “would not add one dollar to municipal revenues”).
When a tax sale certificate is sold to a third party, the right of redemption continues for a period of two years after the date of *111 the sale. N.J.S.A. 54:5-54 and -77. During this two year period, the holder of the certificate may not foreclose the right of redemption. N.J.S.A. 54:5-86. (Presumably, such a foreclosure would eliminate the “delinquency” resulting from the outstanding certificate, although the language of N.J.S.A 54:4-67 does not compel such a result.) Under the Tax Sale Provisions, during the two-year redemption period (in the absence of a redemption) neither the property owner, nor any other taxpayer otherwise having a right to appeal (see, e.g., Village Supermarkets, Inc. v. West Orange Tp., 106 N.J. 628, 525 A.2d 323 (1987), permitting certain shopping tenants to appeal), nor the certificate holder (assuming the holder has standing to appeal, compare Northfield, City v. Zell, 12 N.J.Tax 180 (Tax 1991) with Lato v. Rockaway Tp., 16 N.J.Tax 355 (Tax 1997)) has any ability to contest the assessment imposed by the tax assessor.
The right to appeal a tax assessment is constitutionally protected. “Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause.” McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, supra, 496 U.S. at 36, 110 S.Ct. at 2250, 110 L.Ed.2d at 35-36. If the redemption payment were the mechanism by which the municipality received payment of the delinquent taxes, requiring redemption as a condition to an appeal would constitute a version of “pay now, litigate later,” and would satisfy the requirements of procedural due process. As set forth in McKesson, supra, and in Schneider v. City of East Orange, supra, protecting the flow of revenue to the governmental treasury is a sufficiently strong interest that, for constitutional purposes, due process is not violated if payment is required prior to contesting the amount of a tax obligation. However, as demonstrated above, the redemption payment, which the Tax Sale Provisions require as a condition to contesting a tax obligation, provides no benefit to the municipal treasury. Therefore, mandating such payment as a condition to an appeal violates the “ ‘root requirement’ of the Due Process Clause ... ‘that an individual be given an opportunity for a hearing before he is deprived of any signifi *112 cant property interest.’” Cleveland. Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503-504 (1985) (quoted in McKesson, supra, 496 U.S. at 37, 110 S.Ct. at 2250, 110 L.Ed.2d at 36) (emphasis added). See also Boddie v. Connecticut, supra, 401 U.S. at 378-79, 91 S.Ct. at 786, 28 L.Ed.2d at 119 (emphasizing that “except for extraordinary situations,” due process requires a hearing before deprivation of a property interest occurs.)
In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court defined the requirements of procedural due process as involving a balancing test.
More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
[Id. at 334-35, 96 S.Ct. at 903, 47 L.Ed.2d at 33.]
The New Jersey Supreme Court has adopted this balancing test. Matter of C.A., 146 N.J. 71, 93, 679 A.2d 1153 (1996).
Applying the three components of the test to the Tax Sale Provisions results in the following analysis. (1) The private interest affected by the Provisions is the property owner’s interest in a proper tax assessment, coupled with the owner’s constitutional right to contest a tax assessment. (2) The risk of an erroneous deprivation of the property owner’s interest is significant because, with all rights to appeal denied, the assessor may impose whatever assessment he or she deems appropriate for at least two years after the date of the tax sale. (3) The governmental interest in precluding an appeal, while a tax sale certificate purchased by a third-party is outstanding, is virtually nonexistent. In the circumstances to which the “pay now, litigate later” principle is properly applicable, the governmental interest in precluding an appeal until taxes are paid, as described in McKesson and Schneider, is so strong as to outweigh the private interest in a predeprivation remedy. Here, as discussed above, it is the sale of the certificate, not the redemption of the certificate, which results in payment to *113 the municipality of the delinquent taxes for which the sale took place. Indeed, the very purpose of the sale is to obtain payment of those taxes. Redemption of the certificate will not result in the receipt by the municipality of any revenue.
Permitting an appeal to be filed once the municipality has received payment of the taxes due and interest thereon from the sale of a tax sale certificate in itself would impose no significant fiscal and administrative burdens on the municipality. The municipality would incur no additional costs if an appeal could be filed without redemption of the certificate because all costs of the tax sale will have been incurred before filing of the appeal. Conducting a tax sale would expose a municipality to the risk of an appeal of the underlying tax assessment while the certificate is outstanding, but this risk exists whenever taxes are paid, even if the payment is made by a third party such as the property owner’s relative or friend. Any concern by a municipality that the risk of appeal will discourage investment in tax sale certificates by third parties is unwarranted. An appeal will not prejudice the rights of a third-party purchaser of a tax sale certificate. See Simon v. Voorheex Tp., 289 N.J.Super. 116, 672 A.2d 1292 (App.Div.), certif. denied, 145 N.J. 373, 678 A.2d 714 (1996) (stating that a settlement of a tax appeal “cannot bind the holders of a tax sale certificate or deprive them of their statutory rights.” Id. at 124, 672 A.2d 1292.)
Based on the preceding analysis, I conclude that, in defining a payment from one specific source — the purchaser of a tax sale certificate — as inadequate to constitute payment of taxes for tax appeal purposes, the Tax Sale Provisions prohibit an appeal under circumstances where the tax payment requirements of N.J.S.A 54:3-27 and N.J.S.A. 54:51A-1b have been satisfied and no other legitimate governmental interest is served. Accordingly, the Provisions are unconstitutional because, when (as here) a tax sale certificate is acquired by a third-party purchaser, the Provisions offer only a postdeprivation remedy under circumstances which do not warrant or justify a denial of the predeprivation remedy generally required by due process.
*114 Chapter 4 of Title 54 does not contain a severability clause. However, N.J.S.A. 1:1-10 contemplates a determination that only af portion of a statute is unconstitutional, and provides that any such determination shall not “be deemed to invalidate or make ineffectual the remaining ... provisions.”
[E]ven if there be no such express declaration of separability, an unconstitutional provision in a statute does not affect the validity of a separate article or clause of the enactment, if otherwise valid, unless the two are so intimately connected and mutually dependent as reasonably to-sustain the hypothesis that the Legislature would not have adopted the one without the other. Where the principal object of the statute is constitutional, and the objectionable provision can be excised without substantial impairment of the general purpose, the statute is operative except insofar as it may contravene fundamental law.
[State v. Lanza, 27 N.J. 516, 528, 143 A.2d 571 (1958), appeal dismissed for want of a substantial federal question, 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350, reh’g denied, 359 U.S. 932, 79 S.Ct. 606, 3 L.Ed.2d 634 (1959).]
N.J.S.A. 54:4-67 contains many provisions in addition to the Tax Sale Provisions, and the Tax Sale Provisions can be excised without substantial impairment of those other provisions or the general purpose of the statute. The Tax Sale Provisions, therefore, are severable from the statute.
Defendant’s motion to dismiss the complaint by reason of nonpayment of taxes will be denied, and plaintiffs motion to declare the Tax Sale Provisions unconstitutional will be granted. I need not address the other arguments asserted by plaintiff, including those relating to a denial of equal protection.

 Plaintiff's contentions as to unconstitutionality were stated only in general terms with no specific discussion of substantive or procedural due process.

 The court refers to a "non-jurisdictional motion" because Echelon Glen involved a direct appeal to the Tax Court. As interpreted in Powder Mill I Associates v. Hamilton Township., 190 N.J.Super. 63, 461 A.2d 1199 (App.Div. 1983), the tax payment requirement imposed by N.J.S.A. 54:3-27 in connection with a direct appeal is not jurisdictional. A taxpayer retains the right to satisfy the payment requirement at any time before the return date of a motion by the municipality to dismiss an appeal for non-payment of taxes. The tax payment requirement applicable to plaintiff's appeal from the judgment of the Passaic County Board of Taxation is contained in N.J.S.A. 54:51A-1b, quoted above. This requirement is jurisdictional, and failure to have made the required tax payment at the time the appeal to the Tax Court is filed is not curable. Schneider v. City of East Orange, supra, 196 N.J.Super. 587, 483 A.2d 839.