SARGEANT BROTHERS, INCORPORATED, RESPONDENT, v. E. M. BRANCATI, APPELLANT.

Submitted February 15, 1930—Decided October 20, 1930.

For the appellant, *Eugene A. Liotta.*

For the respondent, *T. Girard Wharton* (*Russell E. Watson,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. This is the appeal of the defendant below from a judgment of the Supreme Court entered upon a verdict for the plaintiff at the Somerset Circuit.

It appears without dispute that on December 2d, 1927, defendant and one Miller entered into two written contracts each for the construction of a house in Plainfield, Union county, upon lands owned by the defendant; that thereafter on December 7th, 1927, the contracts, together with the specifications accompanying the same, were filed in the office of the clerk of the county of Union; that the plaintiff corporation thereafter sold and delivered to the contractor certain materials which were used in the construction of the buildings; that the contractor failed to pay for such materials; that the plaintiff served two stop-notices, one under each contract, upon the defendant on March 29th, 1928, and May 5th, 1928, respectively, and that the defendant refused to pay the plaintiff the amounts claimed under the respective stop-notices.

This suit was brought in the Supreme Court by the plaintiff to recover from the defendant the amount of such claims, pursuant to section 3 of the Mechanics' Lien act (*Comp. Stat., p.* 3290, as amended by *Pamph. L.* 1917, *p.* 821), and plaintiff obtained the judgment now under review.

The main contention raised and argued by the defendant is that "the Supreme Court had no jurisdiction to try the issues involved," the argument being that the Circuit Court had exclusive jurisdiction.

We think that the Supreme Court of the State of New Jersey has original jurisdiction to try a suit on a stop-notice arising under section 3 of the Mechanics' Lien act.

The defendant contends that section 23 of the act deprives a materialman or laborer who has complied with the pro-

visions of section 3 of the right to bring suit in the Supreme Court to enforce his claim against the owner. But that is not so.

The defendant argues that the rights of a stop-notice claimant against an owner are a "lien" within the meaning of section 23 and therefore must be enforced in the Circuit Court. But the defendant fails to recognize the fundamental and material distinctions in the legal relations between materialman and owner, depending upon the filing by the owner of the building contract in accordance with the terms of the statute.

Section 1 of the Mechanics' Lien act provides:

"Every building hereafter erected or built within this state shall be liable for the payment of any debt contracted and owing to any person for labor performed or materials furnished for the erection and construction thereof, which debt shall be a lien on such building, and on the land whereon it stands, including the lot or curtilage whereon the same is erected."

Section 2 provides:

"Whenever any building shall be erected in whole or in part by contract in writing, such building and the land whereon it stands shall be liable to the contractor alone for work done or materials furnished in pursuance of such contract; provided said contract, or a duplicate thereof, together with the specifications accompanying the same, or a copy or copies thereof, be filed in the office of the clerk of the county in which such building is situate before such work done or materials furnished; * * *."

Section 3 provides:

"Whenever any master workman or contractor, or whenever any contractor under any master workman or contractor shall, upon demand, refuse to pay any person who may have furnished him material used in the erection of any such house or other building, or any subcontractor, journeyman or laborer employed by him in erecting or constructing any building, the money or wages due to him, it shall be the duty of such journeyman, laborer, materialman or subcontractor to

give notice in writing to the owner or owners of such building and such master workman or contractor of such refusal, and of the amount due to him or them and so demanded, specifying said amount as nearly as possible, and the owner or owners of such building shall thereupon be authorized to retain the amount so due and claimed by such journeyman, laborer, materialman or subcontractor out of the amount owing by him or them on the contract or that thereafter may become due from him or them on such contract for labor or material used in the erection of such building, giving the master workman or contractor and any contractor under any master workman or contractor written notice of such notice and demand, and if the same be not paid or settled by said master workman or contractor, or such contractor under any master workman or contractor, such owner or owners, on being satisfied of the correctness of said demand, shall pay the same, and the receipt of such journeyman, laborer, materialman or subcontractor for the same shall entitle such owner or owners to an allowance therefor in the settlement of accounts between him and such master workman or contractor, or his representatives or assigns, as so much paid on account."

A "lien" is defined as "a charge upon real or personal property for the satisfaction of some debt or duty." *Webster's New International Dictonary, p.* 1246. This is undoubtedly the meaning attached to the word as used in section 1. *Ayres* v. *Revere,* 25 *N. J. L.* 474.

The object of section 2 of the act is to protect the owner against the "liens" referred to in section 1, and gives the owner the power to extinguish a materialman's or laborer's right to a "lien" by filing the building contract. *Mechanics' Mutual Loan Assocation* v. *Albertson,* 23 *N. J. Eq.* 318; *Anderson Lumber Co.* v. *Friedlander,* 54 *N. J. L.* 375; *Weaver* v. *Atlantic Roofing Co.,* 57 *N. J. Eq.* 547.

Having extinguished the right to a "lien" under section 1 in cases where the contract was filed as provided for in section 2, the legislature created further rights for the materialman and laborer by section 3. That the right to a

"lien" conferred by section 1 is distinctly different from the rights given to a stop-notice claimant under section 3 is clearly pointed out by the courts in several decisions. *Summerman* v. *Knowles,* 33 *N. J. L.* 202; *Beckhard* v. *Rudolph,* 68 *N. J. Eq.* 315.

Other decisions point out that the rights of a stop-notice claimant under section 3 of the act are not strict mechanics' "liens," but entirely different legal relations. *Craig* v. *Smith,* 37 *N. J. L.* 549; *Wightman* v. *Brenner,* 26 *N. J. Eq.* 489; *Taylor* v. *Reed,* 68 *N. J. L.* 178; *Mayer* v. *Mutchler,* 50 *Id.* 162; *Kirtland* v. *Moore,* 40 *N. J. Eq.* 106; *Brunetti* v. *Grandi,* 89 *Id.* 116.

The basic nature of a suit upon a stop-notice differs from that upon a strict mechanics' "lien." The former is against the owner alone and the judgment obtained a general one; an action *in personam. DeMasi* v. *F. W. Bowden Co.,* 99 *N. J. Eq.* 70. The latter is against the contractor and the owner, with the judgment against the owner a special one; an action *in rem* or *quasi in rem. Gordon* v. *Torrey,* 15 *N. J. Eq.* 112; *Washburn* v. *Burns,* 34 *N. J. L.* 18; *Vreeland Building Co.* v. *Knickerbocker Sugar Co.,* 75 *Id.* 551; *Shoemaker* v. *Maloney,* 102 *Id.* 363.

Furthermore, stop-notice claimants are paid in the order of priority of service, whereas "lien" claimants are paid *pro rata. Smith* v. *Dodge & Bliss Co.,* 59 *N. J. Eq.* 584; *DeMasi* v. *F. W. Bowden Co., supra; Vogel* v. *Sloan,* 98 *N. J. Eq.* 300.

It is also to be noticed that section 23 of the Mechanics' Lien act says, in part:

"When a claim is *filed* agreeably to the provisions of this act upon any *lien* created thereby, the same may be enforced by a suit in the Circuit Court of the county where *such building* is situated, or in any District Court of the county * * * where such building is situated * * *; *which suit shall be commenced by summons against the builder and owner* of the land and building, * * * in the following or like form [setting forth the form.]."

In view of these observations respecting the material dis-

tinctions between the rights of a "lien" claimant and a stop-notice claimant, it cannot be said that section 23 lends support to the defendant's contention that a stop-notice claimant's rights must be enforced in the Circuit Court. Section 23 begins "when a claim is *filed*." Stop-notice claimants never file their claims; they are precluded from so doing by section 2 of the act. Only "lien" claimants file their claims as required by section 16 of the act.

Again, section 23 provides, *"which suits shall be commenced by summons against the builder and owner of the land and building."* The words *"which suits"* refer back to the previous provision of the same section which provides that "the same [that is, the claims filed upon any lien] may be enforced by a *suit* in the Circuit Court." Therefore, the suits required to be instituted in the Circuit Court *"shall be commenced by summons against the builder and owner of the land and building."* This part of section 23 clearly indicates the claims which must be instituted in the Circuit Court. Suits by stop-notice claimants are never brought against the builder and owner, but against the latter only. The only suits instituted against both builder and owner are those founded on strict mechanics' liens, where the building contract has not been filed.

The courts have uniformly held that, ordinarily, the stop-notice claimant's rights are enforceable by an action at law (*Reeve* v. *Elmendorf,* 38 *N. J. L.* 125; *Commonwealth Roofing Co.* v. *Riccio,* 81 *N. J. Eq.* 486), and this, of course, includes the right to bring his action in the Supreme Court.

The precise point as to the original jurisdiction of the Supreme Court in cases involving the rights of stop-notice claimants has never been directly adjudicated by our courts. In the absence of express statutory enactment regarding the jurisdiction of the courts in stop-notice cases, the long-continued practice of instituting suit upon such claims in any of the law courts should be determinative of this issue. For whenever there is a debatable question as to the proper construction of a statutory provision, the contemporaneous and long-continued exposition exhibited in the usage and

practice under it justifies the conclusion that the construction thus put upon it by the courts is the true one. *Commonwealth Roofing Co.* v. *Riccio, supra.*

Cases involving rights of stop-notice claimants exhibiting long-continued usage and practice of trying of such actions in the various courts of law are numerous. We mention only the following which were tried in the Supreme Court: *Taylor* v. *Wahl,* 69 *N. J. L.* 471; *Gardner & Meeks Co.* v. *Herold,* 76 *Id.* 524; *Builders Material Supply Co.* v. *Schoen,* 86 *Id.* 290; *Campbell* v. *Lehocky,* 83 *Id.* 505.

We think that the court below did not err in refusing to nonsuit the plaintiff on the ground alleged that the proofs failed to show the delivery of an architect's certificate as provided for in the contracts.

It is true that under a building contract containing a clause requiring the production of an architect's certificate as a condition precedent to payment, the production of the stipulated certificate is a condition precedent to the institution of suits for money payable upon such contract while the provision remains in force. *Byrne* v. *Sisters of Charity of St. Elizabeth,* 45 *N. J. L.* 213; *Kirtland* v. *Moore,* 40 *N. J. Eq.* 106; *Bradner* v. *Roffsell,* 57 *N. J. L.* 412; *Landstra* v. *Bunn,* 81 *Id.* 680.

Such a condition, however, may be waived by the owner in whose interest it is engrafted in the contract, either by the express words relieving the builder therefrom, or the waiver may be inferred from such acts, conduct or declarations of the owner as are inconsistent with the purpose of exacting performance. *Byrne* v. *Sisters of Charity of St. Elizabeth,* 45 *N. J. L.* 213; *Federal Trust Co.* v. *Guigues,* 76 *N. J. Eq.* 495; *Steelman* v. *Ludy,* 77 *N. J. L.* 446; *Stone Post Co.* v. *Corcoran,* 80 *Id.* 549; *F. Bowden Co.* v. *Baier,* 99 *Id.* 361.

Here the evidence was that no architect was ever employed and there was other evidence from which waiver of the provision was to be inferred.

This in effect disposes of every ground of appeal excepting one which is not argued by the defendant-appellant, and is, therefore, presumed to be abandoned. *Cleaves* v. *Yeskel,* 104

*N. J. L.* 497; *Hygrade Cut Fabric Co., Inc.,* v. *United States Stores Corp.,* 105 *Id.* 324; *Cropsey* v. *Cropsey,* 144 *Atl. Rep.* 621.

The judgment below will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, CAMPBELL, LLOYD, BODINE, DALY, DONGES, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.