SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### In re: Princeton Office Park v. Plymouth Park Tax Services, LLC (A-107-11) (069521)

**Argued October 21, 2013 -- Reargued February 3, 2014 -- Decided June 25, 2014**

**PATTERSON, J., writing for a majority of the Court.**

In this case, the Court considers a question of law certified by the United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-1. The Third Circuit's inquiry is whether, under New Jersey law, a tax sale certificate purchaser holds a tax lien.

In 1998, plaintiff Princeton Office Park, L.P. (Princeton Office Park) purchased a 220,000 square foot commercial building on thirty-seven acres of land in the Township of Lawrence (Township). Princeton Office Park did not satisfy its real estate tax obligation to the Township and by 2005 owed the Township $204,296.79, consisting of $192,643.92 in back taxes and $11,652.87 in unpaid penalties. On December 19, 2005, exercising the authority granted to it by N.J.S.A. 54:5-19, the Township conducted a public auction of municipal tax liens. Defendant Plymouth Park Tax Services, LLC (Plymouth Park) bid on a tax sale certificate for Princeton Office Park's property. Plymouth Park agreed to take a zero percent interest rate on the certificate, and to pay $204,296.79 for the taxes and penalties due on the property, plus a $600,100.00 premium and $100.00 to cover the cost of the sale. The Township issued a tax sale certificate to Plymouth Park. Pursuant to N.J.S.A. 54:5-58, Princeton Office Park was required to pay $204,396.79 to redeem the certificate.

As the owner of the tax sale certificate following the public auction, Plymouth Park paid municipal real estate taxes and charges for Princeton Office Park's property through the second quarter of 2008. Pursuant to N.J.S.A. 54:4-67 and N.J.S.A. 54:5-6, the redemption amount accrued interest at a rate of eighteen percent following the sale. On December 18, 2007, Plymouth Park filed a tax lien foreclosure action against Princeton Office Park in the Chancery Division, seeking to enjoin Princeton Office Park from exercising any right of redemption of the certificate, and requesting a declaration that Plymouth Park was the owner in fee simple of the disputed property. On June 6, 2008, the Chancery Division established a deadline by which Princeton Office Park could redeem the certificate and set the redemption amount at $1,012,188.80.

On September 9, 2008, while Plymouth Park's foreclosure action was pending in the Chancery Division, Princeton Office Park filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. Princeton Office Park then filed its Plan of Reorganization and, among other provisions, the Plan envisioned Princeton Office Park's execution of a note and mortgage, securing its obligation to Plymouth Park with interest accrued at a rate of six percent beginning on the Plan's effective date. On July 13, 2009, Plymouth Park objected to Princeton Office Park's Plan of Reorganization. It asserted that it had obtained a tax lien under New Jersey law, and that because the rate of interest governing "tax claims" is "determined under applicable nonbankruptcy law," 11 U.S.C.A. § 511(a), the Bankruptcy Court was not authorized to reduce the statutory rate of eighteen percent to the six percent interest rate requested by Princeton Office Park. The parties thus framed the question that is now before this Court: whether by virtue of its purchase of the tax sale certificate, Plymouth Park acquired a tax lien.

The United States Bankruptcy Court ruled in favor of Princeton Office Park. In re Princeton Office Park, L.P., 423 B.R. 795, 797 (Bankr. D.N.J. 2010). Reasoning that the municipality had not assigned or subrogated its rights to Plymouth Park, the court determined that Plymouth Park's lien did not constitute a tax lien. The court held, accordingly, that the tax sale certificate did not transfer a tax claim and granted Princeton Office Park's motion for partial summary judgment. The United States District Court for the District of New Jersey affirmed, substantially

1

adopting the reasoning of the United States Bankruptcy Court. The District Court characterized the tax sale certificate holder's lien to be one that secures the property owner's obligation to pay the redemption amount, and not as an interest rooted in the obligation to pay taxes to the municipality.

Plymouth Park appealed to the United States Court of Appeals for the Third Circuit. Following oral argument, the Third Circuit invoked Rule 2:12A to raise a question that it considered to be "an important and unresolved question concerning the type of lien acquired by a purchaser of a tax certificate under New Jersey law." The Third Circuit noted that the Bankruptcy Court and District Court had relied upon non-precedential opinions of New Jersey state courts in determining that "the purchase of a tax sale certificate extinguishes the underlying tax claim." The Third Circuit posed the following question to this Court: "Whether, under New Jersey law, a tax sale certificate purchaser holds a tax lien." On May 1, 2012, this Court entered an order accepting the question as certified, pursuant to Rule 2:12A.

**HELD:** The Court answers the Third Circuit's certified question in the affirmative: The purchaser of a tax sale certificate possesses a tax lien on the encumbered property.

1. The Tax Sale Law confers on a municipality that is owed real estate taxes "'a continuous lien on the land' for the delinquent amount as well as for 'all subsequent taxes, interest, penalties and costs of collection.'" Simon v. Cronecker, 189 N.J. 304, 318 (2007) (quoting N.J.S.A. 54:5-6). "The Tax Sale Law converts that lien into a stream of revenue by encouraging the purchase of tax certificates on tax-dormant properties." Ibid. After providing notice to the public and the property owner, the municipality may sell the certificate at a public auction. Pursuant to N.J.S.A. 54:5-32, an investor includes in its bid the rate of interest that it is willing to accept upon redemption of the certificate. The winning bidder is the investor who "will purchase the property, subject to redemption at the lowest rate of interest, but in no case in excess of 18% per annum." N.J.S.A. 54:5-32. The successful bidder's purchase of a tax sale certificate "does not divest the delinquent owner of his title to the land." Twp. of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 4 (App. Div. 1988). Instead, the sale operates as "a conditional conveyance of the property to the purchaser, subject to a person with an interest in the property having the right to redeem the certificate, as prescribed by statute." Simon, supra, 189 N.J. at 318 (citing N.J.S.A. 54:5-31 to -32, -46). By virtue of a foreclosure, however, the purchaser of the tax sale certificate may become "the owner of the property in fee simple." Ibid (citing N.J.S.A. 54:5-87). (pp. 11-16)

2. The legislative purpose of the Tax Sale Law is to "aid municipalities in raising revenue," by attracting "third parties to the opportunity to acquire . . . property." Bron v. Weintraub, 42 N.J. 87, 91-92 (1964). In short, "[t]he purpose of the Tax Sale Law is to enhance the collection of taxes." Simon v. Rando, 374 N.J. Super. 147, 152 (App. Div. 2005), aff'd, 189 N.J. 339, 344-45 (2007). The Third Circuit's certified question requires that the Court classify the lien held by a purchaser of a tax sale certificate. As a general principle, "[a] lien is defined as a charge upon real or personal property for the satisfaction of some debt or duty." Sargeant Bros. v. Brancati, 107 N.J.L. 84, 87 (E & A 1930). The lien is thus premised upon an underlying debt. The Court looks to the Legislature's language to define that lien, and the debt from which it derives. The Court premises its construction of the Tax Sale Law on five statutory provisions: N.J.S.A. 54:5-6, which defines the municipality's continuous tax lien; N.J.S.A. 54:5-42, which provides that the lien is conveyed to the purchaser of a tax sale certificate; N.J.S.A. 54:5-54, which uses the term "tax lien certificate" to describe a tax sale certificate; N.J.S.A. 54:5-43, which recognizes the purchaser's compensable "interest in the tax;" and N.J.S.A. 54:4-67, which provides that the tax delinquency survives the issuance of a certificate. The plain language of these provisions confirms that the debt underlying a certificate holder's lien is the property owner's obligation to pay taxes, and that the lien conferred with the certificate is a tax lien. Moreover, this statutory language reflects the Legislature's intent that a property owner's tax delinquency survive the sale of a tax certificate, and that the certificate holder will hold a lien that is based on that delinquency. (pp. 16-26)

**CHIEF JUSTICE RABNER** and **JUDGE CUFF** (temporarily assigned) filed a separate, **DISSENTING** opinion, stating that they dissent for the reasons expressed in Judge Kaplan's opinion. In re Princeton Office Park, L.P., 423 B.R. 795 (Bankr. D.N.J. 2010).

**JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and JUDGE RODRÍGUEZ (temporarily**

**assigned) join in JUSTICE PATTERSON's opinion.  CHIEF JUSTICE RABNER and JUDGE CUFF (temporarily assigned) filed a separate, dissenting opinion.**

IN RE: PRINCETON OFFICE PARK,
LP,

    Plaintiff-Respondent,

       v.

PLYMOUTH PARK TAX SERVICES,
LLC,

    Defendant-Appellant.


        Argued October 21, 2013
        Reargued February 3, 2014 – Decided June 25, 2014

        On appeal from the United States District
        Court, District of New Jersey.

        Stephen B. McNally argued the cause for
        appellant (McNally & Associates, attorneys;
        Lauren Busche, of counsel).

        Lawrence S. Berger argued the cause for
        respondent (Berger & Bornstein and Norris
        McLaughlin & Marcus, attorneys; Mr. Berger
        and Morris S. Bauer, of counsel; Mr. Berger,
        Mr. Bauer, and Robert A. Bornstein, on the
        briefs).

        Keith A. Bonchi argued the cause for amici
        curiae New Jersey State League of
        Municipalities, Tax Collectors and
        Treasurers Association of New Jersey,
        Township of Lawrence, and Northeast Regional
        Tax Collectors and Treasurers Association
        (Goldenberg, Mackler, Sayegh, Mintz,
        Pfeffer, Bonchi & Gill, attorneys; Mr.
        Bonchi and Rachelle J. Armbruster, on the
        briefs).

Adam D. Greenberg argued the cause for amicus curiae National Tax Lien Association, Inc. (Honig & Greenberg and Taylor and Keyser, attorneys; Mr. Greenberg and Robert W. Keyser, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this case, the Court considers a question of law certified by the United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-1. The Third Circuit's inquiry is whether, under New Jersey law, a tax sale certificate purchaser holds a tax lien. Construing the plain language of several provisions of the Tax Sale Law, N.J.S.A. 54:5-1 to -137, in accordance with the statute's purpose to promote the sale of tax sale certificates as a source of municipal revenue, we hold that the purchaser of a tax sale certificate possesses a tax lien on the encumbered property. Accordingly, we respond to the Third Circuit's inquiry in the affirmative.

I.

The Third Circuit's certified question is posed in the setting of a record in which the facts are undisputed. In 1998, plaintiff Princeton Office Park, L.P. (Princeton Office Park) purchased a 220,000 square foot commercial building on thirty-seven acres of land in the Township of Lawrence. Princeton Office Park did not satisfy its real estate tax obligation to

2

the Township of Lawrence. By 2005, Princeton Office Park owed the Township of Lawrence $204,296.79, consisting of $192,643.92 in back taxes and $11,652.87 in unpaid penalties.

On December 19, 2005, exercising the authority granted to it by N.J.S.A. 54:5-19, the Township of Lawrence conducted a public auction of municipal tax liens. Defendant Plymouth Park Tax Services, LLC (Plymouth Park) bid on a tax sale certificate for Princeton Office Park's property. Plymouth Park agreed to accept a zero percent interest rate on the certificate, and to pay $204,296.79 for the taxes and penalties due on the property -- the entire amount of Princeton Park's outstanding real estate taxes -- plus a $600,100.00 premium and $100.00 to cover the cost of the sale. Consistent with the provisions of N.J.S.A. 54:5-32, which designates as the winning bidder the party that commits to accept the lowest interest rate on the tax certificate not to exceed eighteen percent, the Township of Lawrence issued a tax sale certificate to Plymouth Park. N.J.S.A. 54:5-32. Under the terms set forth in the tax sale certificate, and pursuant to N.J.S.A. 54:5-58, Princeton Office Park was required to pay $204,396.79 to redeem the certificate.

As the owner of the tax sale certificate following the public auction, Plymouth Park paid municipal real estate taxes and charges for Princeton Office Park's property through the

3

second quarter of 2008.  By operation of N.J.S.A. 54:5-6, Plymouth Park's additional payments were added to the sum required for Princeton Office Park to redeem the tax sale certificate owned by Plymouth Park.  Pursuant to N.J.S.A. 54:4-67 and N.J.S.A. 54:5-6, the redemption amount accrued interest at a rate of eighteen percent following the sale.

On December 18, 2007, Plymouth Park filed a tax lien foreclosure action against Princeton Office Park in the Chancery Division, seeking to enjoin Princeton Office Park from exercising any right of redemption of the certificate, and requesting a declaration that Plymouth Park was the owner in fee simple of the disputed property.[1]  On June 6, 2008, the Chancery Division entered an order establishing a deadline by which Princeton Office Park could redeem the certificate.  The court determined that the total amount that Princeton Office Park was required to pay to redeem the certificate was $1,012,188.80.

On September 9, 2008, while Plymouth Park's foreclosure action was pending in the Chancery Division, Princeton Office Park filed a voluntary Chapter 11 bankruptcy petition, pursuant to 11 U.S.C.A. § 1101 to 1174, in the United States Bankruptcy Court for the District of New Jersey.  On October 29, 2008,

---

[1] The named plaintiff in the Chancery Division action was "Wachovia CUST for Plym Pk Tax Srvs."  The record does not reveal the relationship between that entity and Plymouth Park.

4

Plymouth Park filed an initial proof of claim in the Bankruptcy Court, citing "taxes" as the basis for its claim. Following an amendment, Plymouth Park's proof of claim sought $1,155,487.81. According to Plymouth Park's amended proof of claim, this figure represented the amount that Plymouth Park had paid for the tax sale certificate, the post-sale tax payments made to the Township of Lawrence, other penalties, and the accrued post-petition interest calculated at the rate of eighteen percent as authorized by N.J.S.A. 54:4-67 and N.J.S.A. 54:5-6.

On June 10, 2009, Princeton Office Park filed its Plan of Reorganization in the Bankruptcy Court. Among other provisions, the Plan of Reorganization envisioned Princeton Office Park's execution of a note and mortgage, securing its obligation to Plymouth Park with interest accrued at a rate of six percent beginning on the Plan's effective date.

On July 13, 2009, Plymouth Park objected to Princeton Office Park's Plan of Reorganization. It asserted that it had obtained a tax lien under New Jersey law, and that because the rate of interest governing "tax claims" is "determined under applicable nonbankruptcy law," 11 U.S.C.A. § 511(a), the Bankruptcy Court was not authorized to reduce the statutory rate of eighteen percent to the six percent interest rate requested by Princeton Office Park. The parties thus framed the question

5

that is now before this Court: whether by virtue of its purchase of the tax sale certificate, Plymouth Park acquired a tax lien.

The United States Bankruptcy Court ruled in favor of Princeton Office Park.  In re Princeton Office Park, L.P., 423 B.R. 795, 797 (Bankr. D.N.J. 2010).  Noting that a tax lien is described in 11 U.S.C.A. § 724(b) of the Bankruptcy Code as a lien that "secures an allowed claim for a tax," the Bankruptcy Court concluded that Plymouth did "not possess an allowed claim for taxes" because the underlying taxes owed by Princeton Office Park to the Township of Lawrence had been paid, and Plymouth Park had no authority to assess or collect taxes.  Id. at 801. Reasoning that the municipality had not assigned or subrogated its rights to Plymouth Park, the court determined that Plymouth Park's lien did not constitute a tax lien.  Id. at 805-06.  The court held, accordingly, that the tax sale certificate did not transfer a tax claim.  Id. at 808.  The Bankruptcy Court granted Princeton Office Park's motion for partial summary judgment. Ibid.

The United States District Court for the District of New Jersey affirmed, substantially adopting the reasoning of the United States Bankruptcy Court.  The District Court construed the Tax Sale Law to confer on the purchaser of a tax sale certificate a lien, but not a lien that would permit the holder

6

of the certificate to collect unpaid taxes owed to the municipality. It determined that a 1997 amendment to N.J.S.A. 54:4-67, which provides that a tax delinquency persists after a tax certificate sale, did not bolster Plymouth Park's contention that it held a tax lien, because that amendment was held unconstitutional by the Tax Court in Ramos v. Passaic City, 19 N.J. Tax 97, 104 (Tax 2000). The District Court characterized the tax sale certificate holder's lien to be one that secures the property owner's obligation to pay the redemption amount, and not as an interest rooted in the obligation to pay taxes to the municipality. It acknowledged that its ruling could reduce demand for tax sale certificates and thus constrain municipalities from raising revenue, but concluded that that was a matter for the Legislature to resolve.

Plymouth Park appealed to the United States Court of Appeals for the Third Circuit. Following oral argument, the Third Circuit invoked Rule 2:12A to raise a question that it considered to be "an important and unresolved question concerning the type of lien acquired by a purchaser of a tax certificate under New Jersey law." The Third Circuit observed that N.J.S.A. 54:4-67 provides that a property owner's tax delinquency is not extinguished by the issuance of a tax sale certificate. It noted that the Bankruptcy Court and District

7

Court had relied upon non-precedential opinions of New Jersey state courts in determining that "the purchase of a tax sale certificate extinguishes the underlying tax claim." The Third Circuit posed the following question to this Court: "Whether, under New Jersey law, a tax sale certificate purchaser holds a tax lien."

On May 1, 2012, this Court entered an order accepting the question as certified, pursuant to Rule 2:12A.[2]

## II.

Plymouth Park argues that the holder of a tax sale certificate acquires a tax lien under New Jersey law. It disputes the conclusion of the Bankruptcy Court and the District Court that real property taxes should be deemed satisfied when a municipality is paid by the holder of a tax sale certificate, contending that N.J.S.A. 54:5-42 and -46 effect a conveyance of a lien that is indivisible from the underlying tax debt. Citing N.J.S.A. 54:4-67, Plymouth Park asserts that taxes owed to a municipality constitute an in rem obligation that persists after

---

[2] At reargument on February 3, 2014, the parties informed the Court that on January 31, 2014, the Bankruptcy Court had held that Plymouth Park's tax sale certificate is subject to forfeiture pursuant to N.J.S.A. 54:5-63.1, and voided its lien on Princeton Office Park's property pursuant to 11 U.S.C.A. § 506(d). The Court, however, has not been advised by the Third Circuit that the Bankruptcy Court's forfeiture decision affects the certified question.

the tax sale certificate is sold, rather than an in personam obligation of the taxpayer. It argues that case law has not abrogated N.J.S.A. 54:4-67's provision that a municipal tax delinquency survives the conveyance of a tax sale certificate and the certificate holder's payment of taxes.

Princeton Office Park counters that the lien held by the purchaser of a tax sale certificate secures the purchaser's investment in the certificate, the interest that accrues in accordance with the purchaser's bid, and other sums authorized by statute, but not the payment of taxes. It differentiates municipal liens from tax sale certificates on the basis that, after the sale is conducted, and the outstanding real estate taxes are paid, the private purchaser of the certificate has a more limited interest than the municipality. Princeton Office Park characterizes the conveyance of the tax sale certificate as a loan, noting that when the certificate is redeemed, the purchaser is repaid the amount that it paid on outstanding real estate taxes. Princeton Office Park disputes Plymouth Park's reliance on N.J.S.A. 54:4-67. It argues that the "delinquency" preserved after a tax sale certificate is conveyed refers only to the interest and discount authority granted by statute to the municipality.

Amici curiae New Jersey State League of Municipalities, Tax Collectors and Treasurers Association of New Jersey, the Township of Lawrence, and Northeast Regional Tax Collectors and Treasurers Association argue that the Tax Sale Law clearly establishes that the holder of a tax sale certificate holds a tax lien. They characterize the lien held by the owner of a tax sale certificate to be closely analogous to a lien held by a municipality or a third party. Amici assert that the purpose of the Tax Sale Law is to make tax sale certificates an attractive investment in order to permit municipalities to raise revenue, and that the statute should be construed accordingly to confer on the holder of a certificate a tax lien that is exempt from the interest rate reduction that would otherwise be authorized by the Bankruptcy Code.

Amicus curiae National Tax Lien Association, Inc. (NTLA) contends that the Bankruptcy Court and District Court decisions would, if affirmed, effectively eliminate the New Jersey market for tax sale certificates. It asserts that investors typically borrow money to purchase tax sale certificates, and that limiting the interest rates available to them would chill the demand for the certificates. NTLA relies upon N.J.S.A. 54:4-67, arguing that the tax delinquency survives the certificate holder's payment of the real estate taxes, and contends that

10

municipal liens and liens acquired by virtue of the purchase of tax sale certificates differ only in minor respects. NTLA urges the Court to hold that the owner of a tax sale certificate acquires a tax lien.

### III.

We begin by reviewing the statutory scheme for the purchase and sale of tax sale certificates. The Tax Sale Law serves "as a framework to facilitate the collection of property taxes." Varsolona v. Breen Capital Servs. Corp., 180 N.J. 605, 620 (2004) (citing Dvorkin v. Twp. of Dover, 29 N.J. 303, 309 (1959)). It confers on a municipality that is owed real estate taxes "'a continuous lien on the land' for the delinquent amount as well as for 'all subsequent taxes, interest, penalties and costs of collection.'" Simon v. Cronecker, 189 N.J. 304, 318 (2007) (quoting N.J.S.A. 54:5-6). "The Tax Sale Law converts that lien into a stream of revenue by encouraging the purchase of tax certificates on tax-dormant properties." Ibid. By authorizing the sale of liens in a commercial market, the Tax Sale Law gives rise to "a municipal financing option that provides a mechanism to transform a non-performing asset into cash without raising taxes." Varsolona, supra, 180 N.J. at 610.

11

The Tax Sale Law sets forth the procedure by which tax sale certificates are generated, purchased, and sold.[3] The certificate, drafted by an official designated by the municipality, verifies "the taxes, assessments or other municipal liens or charges, levied or assessed against the property described in the application" as of the certificate's effective date. N.J.S.A. 54:5-11, -12. After providing notice to the public and the property owner as required by N.J.S.A. 54:5-26 and -27, the municipality may sell the certificate at a public auction.

Pursuant to N.J.S.A. 54:5-32, an investor includes in its bid the rate of interest that it is willing to accept upon redemption of the certificate. N.J.S.A. 54:5-32. The winning bidder is the investor who "will purchase the property, subject to redemption at the lowest rate of interest, but in no case in excess of 18% per annum." N.J.S.A. 54:5-32. The statute authorizes bidders who are willing to accept redemption "at a

_____

[3] The original Tax Sale Law was enacted in 1918. L. 1918 c. 237. The sponsor's statement appended to the original bill stated that the act was "intended to revise the procedure for tax sales" that were "scattered throughout many different acts, and to provide a uniform and simple procedure for the enforcement of all classes of delinquent municipal arrears, in order that the municipality may get its money without difficulty or question, with the least burden on the property owner, consistent with fair protection to the purchaser at a tax sale." Assemb. 52 (Sponsor's Statement), 142d Leg. (1918).

rate of interest less than 1%, or at no interest," to offer to pay "a premium over and above the amount of taxes, assessments or other charges . . . due the municipality." N.J.S.A. 54:5-32.[4] "[T]he property [is] struck off and sold to the bidder who offers to pay the amount of such taxes, assessments or charges, plus the highest amount of premium." N.J.S.A. 54:5-32.

The successful bidder's purchase of a tax sale certificate "does not divest the delinquent owner of his title to the land." Twp. of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 4 (App. Div. 1988). Instead, the sale operates as "a conditional conveyance of the property to the purchaser, subject to a person with an interest in the property having the right to redeem the certificate, as prescribed by statute." Simon, supra, 189 N.J. at 318 (citing N.J.S.A. 54:5-31 to -32, -46). The purchaser acquires an

> inchoate interest [that] consists of three
> rights: the right to receive the sum paid
> for the certificate with interest at the
> redemption rate for which the property was
> sold; the right to redeem from the holder a

---

[4] If such a premium is a component of an accepted bid, it is "held by the collector and returned to the purchaser of the fee if and when redemption is made." N.J.S.A. 54:5-33. If the certificate is not redeemed within five years of the date of sale, the premium payment is "turned over to the treasurer of the municipality." N.J.S.A. 54:5-33. That five-year period is "extended for each day that the foreclosure action is precluded" by a petition for bankruptcy filed by the property owner. N.J.S.A. 54:5-33.

> subsequently issued tax sale certificate; and the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including that of the property owner.
>
> [Varsolona, supra, 180 N.J. at 618 (citing Twp. of Jefferson, supra, 228 N.J. Super. at 4-5).]

The right to acquire title by foreclosure is asserted in the Superior Court, which may enter final judgment "to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens, and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser." N.J.S.A. 54:5-87; Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 163 (App. Div. 2005). Thus, by virtue of foreclosure, the purchaser of the tax sale certificate may become "the owner of the property in fee simple." Simon, supra, 189 N.J. at 318 (citing N.J.S.A. 54:5-87).

The issue raised by this case -- whether the lien created by the conveyance of a tax sale certificate is a tax lien -- arises from language that appears in 11 U.S.C.A. § 511 of the Bankruptcy Code. In a plan of reorganization, a bankruptcy court overseeing the confirmation of a Chapter 11 reorganization plan may in appropriate settings reduce, or "cram down," the rate of interest to be paid by a debtor to a creditor. See 11

14

U.S.C.A. § 1129(b); Till v. SCS Credit Corp., 541 U.S. 465, 473-80, 124 S. Ct. 1951, 1958-61, 158 L. Ed. 2d 787, 797-800 (2004) (adopting "formula approach" to determine "cram down" interest rate in Chapter 13 bankruptcy proceedings governed by 11 U.S.C.A. 1325(a)(5)(B)); In re Tex. Grand Prairie Hotel Realty, L.L.C., 710 F.3d 324, 333 (5th Cir. 2013) (noting that "the vast majority of bankruptcy courts" have elected to follow Till formula for "cram down" determinations in Chapter 11 context); In re Cantwell, 336 B.R. 688, 690-93 (Bankr. D.N.J. 2006) (applying principles from United States Supreme Court's analysis in Till in determination of "cram down" interest rates in Chapter 11 setting governed by 11 U.S.C.A. § 1129). The Bankruptcy Code, however, specifically excludes a "tax claim" from the "cram down" procedure authorized by 11 U.S.C.A. § 1129(b) and case law. 11 U.S.C.A. § 511(a) provides:

> If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.
>
> [11 U.S.C.A. § 511(a).]

15

In light of this limitation on the Bankruptcy Court's authority to "cram down" interest rates if the claim at issue is a tax claim, the Third Circuit has posed its certified question.

IV.

In our interpretation of the Tax Sale Law, we are guided by established principles of statutory construction. "When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent." State v. Shelley, 205 N.J. 320, 323 (2011). In so doing, "'words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.'" Livsey v. Mercury Ins. Grp., 197 N.J. 522, 530 (2009) (quoting In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94 (2007); N.J.S.A. 1:1-1). "To accomplish that, we read the statutes in their entirety and construe 'each part or section . . . in connection with every other part or section to provide a harmonious whole.'" State v. Marquez, 202 N.J. 485, 499 (2010) (alteration in original) (quoting Bedford v. Riello, 195 N.J. 210, 224 (2008)).

"When the Legislature's chosen words lead to one clear and unambiguous result, the interpretative process comes to a close,

16

without the need to consider extrinsic aids." Shelley, supra, 205 N.J. at 323. A court "seek[s] out extrinsic evidence, such as legislative history, for assistance when statutory language yields 'more than one plausible interpretation.'" Id. at 323-24 (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)); see also Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 419 (2009) (stating that "if there is ambiguity in the statutory language that leads to more than one plausible interpretation, [a court] may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction, for further assistance in [its] interpretative task" (internal quotation marks omitted)). A court "may also turn to extrinsic guides if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." Wilson v. City of Jersey City, 209 N.J. 558, 572 (2012).

In accordance with those principles, we construe the relevant provisions of the Tax Sale Law. The statute is a "remedial statute . . . [to be] liberally construed to effectuate the remedial objects thereof." N.J.S.A. 54:5-3. The legislative purpose is to "aid municipalities in raising revenue," by attracting "third parties to the opportunity to acquire . . . property." Bron v. Weintraub, 42 N.J. 87, 91-92 (1964); see also In re Curry, 493 B.R. 447, 451 (Bankr. D.N.J.

17

2013) (stating that certain "provisions of the Tax Sale Law make it evident that the process created by the statute has but one goal -- the collection of taxes"); Lonsk v. Pennefather, 168 N.J. Super. 178, 182 (App. Div. 1979) (noting that "the public policy in this State is to encourage tax sale foreclosure so as to assist municipalities in the collection of delinquent taxes"). In short, "[t]he purpose of the Tax Sale Law is to enhance the collection of taxes." Simon v. Rando, 374 N.J. Super. 147, 152 (App. Div. 2005), aff'd, 189 N.J. 339, 344-45 (2007); see Varsolona, supra, 180 N.J. at 617-18; In re Kopec, 473 B.R. 597, 600-01 (Bankr. D.N.J. 2012).

The Third Circuit's certified question requires that we classify the lien held by a purchaser of a tax sale certificate. As a general principle, "[a] lien is defined as a charge upon real or personal property for the satisfaction of some debt or duty." Sargeant Bros. v. Brancati, 107 N.J.L. 84, 87 (E & A 1930) (internal quotation marks omitted); see Chase Manhattan Mortg. Corp. v. Spina, 325 N.J. Super. 42, 48-49 (Ch. Div. 1998) ("The word lien is a generic term that includes in its definition any claim, encumbrance, or charge on property for payment of some debt, obligation or duty whether acquired by contract or by operation of law." (internal quotation marks omitted)), aff'd sub nom., Chase Manhattan Mortg. Corp. v.

18

Heritage Square Ass'n, 325 N.J. Super. 1, 2 (App. Div. 1999). The lien is thus premised upon an underlying debt. We look to the Legislature's language to define that lien, and the debt from which it derives.

In five statutory provisions, the Legislature has offered substantial guidance on this issue. First, N.J.S.A. 54:5-6 provides that "[t]axes on lands shall be a continuous lien on the land on which they are assessed and all subsequent taxes, interest, penalties and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien." N.J.S.A. 54:5-6. Second, the continuous lien is conveyed to the holder of a tax sale certificate by operation of N.J.S.A. 54:5-42, which provides that "[w]hen a sale is made in the enforcement of a municipal lien, the lien shall pass, with the title, to the purchaser, and if the sale shall be set aside for defect in the proceedings to sell, the lien shall be thereby continued." N.J.S.A. 54:5-42; see also Varsolona, supra, 180 N.J. at 618. As the Appellate Division held in Savage v. Weissman, a tax sale certificate does not give rise to an outright conveyance of the property, but rather creates "a lien on the premises and conveys the lien interest of the taxing authority." 355 N.J. Super. 429, 436 (App. Div. 2002); see also Twp. of Jefferson, supra, 228 N.J. Super. at 4 (noting that

19

"[t]he certificate holder succeeds to the lien interest of the taxing district"). The purchaser of a tax sale certificate thus acquires a lien formerly held by the municipality's taxing authority, derived from the property owner's obligation to pay real estate taxes.

Third, in N.J.S.A. 54:5-54, the Legislature identified as one of the parties entitled to redeem a tax sale certificate the holder of a "prior outstanding tax lien certificate." The Legislature used "tax lien certificate" as an alternative term for "tax sale certificate." That section provides in part:

> Except as hereinafter provided, the owner, his heirs, holder of any prior outstanding tax lien certificate, mortgagee, or occupant of land sold for municipal taxes, assessment for benefits pursuant to [N.J.S.A.] 54:5-7 or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner in this chapter set forth, by paying to the collector, or to the collector of delinquent taxes on lands of the municipality where the land is situate, for the use of the purchaser, his heirs or assigns, the amount required for redemption as hereinafter set forth.
>
> [N.J.S.A. 54:5-54 (emphasis added).]

The Legislature's interchangeable use of the terms "tax lien certificate" and "tax sale certificate" is evidence of its intent. See, e.g., Perez v. Rent-A-Center, Inc., 186 N.J. 188, 212 (2006) (noting, in context of Retail Installment Sales Act,

20

that "the terms interest and time price differential are used interchangeably" and have been given equivalent meaning). N.J.S.A. 54:5-54 thus evinces a legislative intent to confer on the certificate owner a "tax lien."

A fourth provision further indicates that the tax sale certificate purchaser acquires a lien derived from the property owner's obligation to pay taxes to the municipality. N.J.S.A. 54:5-43, which prescribes the procedure to be followed in the event that the sale of a certificate is set aside, provides in part:

> If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest, upon his assigning to the municipality the certificate of sale and all his interest in the tax, assessment or other charges and in the municipal lien therefor, and the municipality may readvertise and sell if the municipal lien remains in force.
>
> [N.J.S.A. 54:5-43 (emphasis added)].

That statutory language -- acknowledging that the holder of a certificate has an "interest in the tax" and "the municipal lien therefor" -- demonstrates that the certificate's owner holds a tax lien based on a tax debt, not another form of lien independent of the property owner's obligation to pay taxes. See Kopec, supra, 473 B.R. at 601 (stating that N.J.S.A. 54:5-43's "language strongly suggests that the claim of the holder of

21

a tax sale certificate is based on the underlying tax"); Curry,

supra, 493 B.R. at 450 ("As the purpose of a lien is to secure

payment of a debt, logically the debt owed to the taxing

authority is conveyed as well."). We find that N.J.S.A. 54:5-43

provides compelling evidence of legislative intent.

A fifth provision, N.J.S.A. 54:4-67, rebuts property owner

Princeton Office Park's argument that a tax sale certificate

holder's lien is not a tax lien because a tax lien cannot

survive the payment of real estate taxes owed to the

municipality. N.J.S.A. 54:4-67 governs the discounts that a

municipality may give if real estate taxes are paid prior to

delinquency, and determines the interest that may be charged on

delinquent taxes. N.J.S.A. 54:4-67. In accordance with a 1994

amendment to N.J.S.A. 54:4-67, a property owner's tax

"delinquency" survives, despite the sale of a tax sale

certificate. L. 1994, c. 32, § 4.[5] Under a 1997 amendment, a

---

[5] The 1994 amendment to N.J.S.A. 54:4-67 was a legislative
response to a Tax Court decision, Freehold Office Park, Ltd. v.
Twp. of Freehold, in which the Tax Court held that real estate
taxes should be considered paid when the municipality receives
the proceeds from a tax sale certificate for purposes of
determining, pursuant to N.J.S.A. 54:3-27, whether the property
owner is authorized to institute a tax appeal. 12 N.J. Tax 433,
440-41 (Tax 1992). N.J.S.A. 54:3-27 codifies the principle of
"pay now, litigate later" for purposes of determining whether a
property owner may file a tax appeal. It specifically provides
that "[a] taxpayer who shall file an appeal from an assessment
against him shall pay to the collector of the taxing district no

22

property owner's tax delinquency survives notwithstanding "the payment of delinquent tax by the purchaser of the total property tax levy . . . and for the purposes of satisfying the requirements for filing any tax appeal with the county board of taxation or the State tax court." L. 1997, c. 99, § 4. Thus, as amended, N.J.S.A. 54:4-67(c) provides in relevant part:

> The property shall remain delinquent, as defined herein, until such time as all unpaid taxes, including subsequent taxes and liens, together with interest thereon shall have been fully paid and satisfied. The delinquency shall remain notwithstanding the issuance of a certificate of sale pursuant to [N.J.S.A.] 54:5-32 and [N.J.S.A.] 54:5-46, the payment of delinquent tax by the purchaser of the total property tax levy pursuant to [N.J.S.A. 54:5-113.5] and for the purposes of satisfying the requirements for filing any tax appeal with the county board of taxation or the State tax court.
>
> [N.J.S.A. 54:4-67(c).][6]

This statutory language thus reflects the Legislature's intent that a property owner's tax delinquency survive the sale of a tax certificate, and that the certificate holder will hold a lien that is based on that delinquency.

---

less than the total of all taxes and municipal charges due, up to and including the first quarter of the taxes and municipal charges assessed against him." N.J.S.A. 54:3-27.

[6] N.J.S.A. 54:4-67 defines "delinquency" to denote "the sum of all taxes and municipal charges due on a given parcel of property covering any number of quarters or years."

That expression of legislative intent is unaltered by the Tax Court's decision in Ramos, supra, 19 N.J. Tax 97. In Ramos, the Tax Court held that, as amended, N.J.S.A. 54:4-67 was intended "to define a tax delinquency as continuing after the sale of a tax sale certificate." Id. at 106. Although the Tax Court rejected substantive due process claims asserted by the taxpayer, id. at 109, it found a constitutional infirmity in the 1997 amendment to N.J.S.A. 54:4-67, which would preclude the property owner from filing a tax appeal following the sale of a tax sale certificate, id. at 106, 113-14. The Tax Court held that N.J.S.A. 54:51A-1(b)'s bar on the property owner's filing of a tax appeal, following the conveyance of a tax sale certificate and the purchaser's payment of outstanding taxes, violated procedural due process. Id. at 111-13 (citing Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18, 33 (1976)). The Tax Court held unconstitutional the tax appeal language in the 1997 amendment to N.J.S.A. 54:4-67 "because, when (as here) a tax sale certificate is acquired by a third-party purchaser, the Provisions offer only a postdeprivation remedy under circumstances which do not warrant or justify a denial of the predeprivation remedy generally required by due process." Id. at 113.[7]

---

[7] The Tax Court's decision in Ramos was not reviewed on appeal,

24

The Tax Court's opinion in Ramos does not undermine the expression of legislative intent found in the text of N.J.S.A. 54:4-67.  Regardless of whether a property owner may file a tax appeal after the issuance of a tax sale certificate -- an issue not raised by this case -- the Legislature clearly intended that the "delinquency" survive the payment of taxes following the issuance of a tax sale certificate, as the Tax Court in Ramos, supra, acknowledged.  19 N.J. Tax at 104 (citing N.J.S.A. 54:4-67).  N.J.S.A. 54:4-67 thus confirms that a certificate holder's lien is derived from the property owner's obligation to pay real estate taxes.  As the Bankruptcy Court did in Curry, supra, 493 B.R. at 451-52, and Kopec, supra, 473 B.R. at 601-02, we construe N.J.S.A. 54:4-67 to indicate that the certificate holder's lien is indeed a tax lien.

In sum, we premise our construction of the Tax Sale Law on five provisions of the statute: N.J.S.A. 54:5-6, which defines the municipality's continuous tax lien; N.J.S.A. 54:5-42, which

and the Legislature did not amend N.J.S.A. 54:4-67 in its wake. Without discussing Ramos, the Appellate Division panel deciding Dover-Chester Assocs. v. Randolph Twp. recently concluded that the public policy behind the statutory mandate that taxes be paid before a tax appeal is filed is "to protect the municipality's interest in receiving timely payment," and suggested that the requirement "may not be satisfied by the subsequent issuance of a tax certificate."  419 N.J. Super. 184, 201-02 (App. Div. 2011).  This case does not raise the procedural issue addressed by Ramos and Dover-Chester Assocs., and we do not reach that issue.

25

provides that the lien is conveyed to the purchaser of a tax sale certificate; N.J.S.A. 54:5-54, which uses the term "tax lien certificate" to describe a tax sale certificate; N.J.S.A. 54:5-43, which recognizes the purchaser's compensable "interest in the tax;" and N.J.S.A. 54:4-67, which provides that the tax delinquency survives the issuance of a certificate. The plain language of these provisions confirms that the debt underlying a certificate holder's lien is the property owner's obligation to pay taxes, and that the lien conferred with the certificate is a tax lien. This statutory interpretation furthers the Tax Sale Law's fundamental objective of making tax sale certificates an attractive investment for third parties, thereby assisting municipalities in raising revenue. Varsolona, supra, 180 N.J. at 617-18; Bron, supra, 42 N.J. at 91-92; Lonsk, supra, 168 N.J. Super. at 182.

Should the Legislature determine that a municipality's issuance of a tax sale certificate does not convey a tax lien on the purchaser, it can amend the statute accordingly.

JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE PATTERSON's opinion. CHIEF JUSTICE RABNER and JUDGE CUFF (temporarily assigned) filed a separate, dissenting opinion.

26

IN RE: PRINCETON OFFICE PARK,
LP,

    Plaintiff-Respondent,

        v.

PLYMOUTH PARK TAX SERVICES,
LLC,

    Defendant-Appellant.


    CHIEF JUSTICE RABNER and JUDGE CUFF (temporarily assigned),
dissenting.

    We dissent from the majority's response to the question of law certified by the United States Court of Appeals for the Third Circuit substantially for the reasons expressed in Judge Kaplan's opinion. In re Princeton Office Park, L.P., 423 B.R. 795 (Bankr. D.N.J. 2010).

1

SUPREME COURT OF NEW JERSEY

NO.    A-107                          SEPTEMBER TERM 2011

On appeal from the United States District Court, District of New Jersey


IN RE:  PRINCETON OFFICE PARK,
LP,

        Plaintiff-Respondent,

                v.

PLYMOUTH PARK TAX SERVICES,
LLC,

        Defendant-Appellant.


DECIDED          June 25, 2014
                Chief Justice Rabner                          PRESIDING
OPINION BY          Justice Patterson
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY      Chief Justice Rabner and Judge Cuff

| CHECKLIST | FOR THE JUDGMENT | DISSENT |
|---|---|---|
| CHIEF JUSTICE RABNER | | X |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | | X |
| TOTALS | 5 | 2 |

1